```
                                                            ┌─────────────────────────────────┐
                                                            │ USDC SDNY                        │
UNITED STATES DISTRICT COURT                                │ DOCUMENT                         │
SOUTHERN DISTRICT OF NEW YORK                               │ ELECTRONICALLY FILED             │
-----------------------------------------------------------X│ DOC #: _____         │
                                                      :     │ DATE FILED: 9/29/2025            │
FELIPE ACEVEDO,                                       :     └─────────────────────────────────┘
                                                      :
                                     Plaintiff,       :              1:24-cv-558-GHW
                                                      :
                        -v-                           :        MEMORANDUM OPINION &
                                                      :              ORDER
CITY OF NEW YORK, et al.,                             :
                                                      :
                                     Defendants.      :
                                                      :
-----------------------------------------------------------X
```

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

In August 2023, Plaintiff Felipe Acevedo was shot in the foot. He was treated at Harlem Hospital. Medical staff determined that no bones in his foot were fractured, gave him an orthopedic shoe and a cane, and released him to the custody of Officers Edwin Howell and Griselly Rosario of the New York City Police Department (the "NYPD"). The officers took him to a police station and questioned him for over six hours while he bled through his bandages. He was then released. Days later, Mr. Acevedo sought treatment for his foot at Harlem Hospital and at Mount Sinai Hospital.

In January 2024, Plaintiff, proceeding *pro se*, sued the City of New York (the "City") and several other defendants, seeking damages for alleged violations of his constitutional rights. In the operative complaint, he alleges that Officers Howell and Rosario and several members of the medical staff at Harlem Hospital were deliberately indifferent to his medical needs and that Officers Howell and Rosario violated his rights by interviewing him under duress. He also seeks to hold the City liable under 42 U.S.C. § 1983 for the alleged misconduct of Officers Howell and Rosario. The City moved to dismiss the claims made against it. Because Plaintiff has not adequately alleged facts supporting any theory of municipal liability or establishing that he served the City with a notice of claim as required by New York state law, the City's motion to dismiss is GRANTED.

## II.     BACKGROUND

### A.  Facts[1]

On August 6, 2023, Plaintiff was taken to the Harlem Hospital emergency room after he was shot in the foot. TAC at 5. Plaintiff was accompanied to the hospital by Officers Griselly Rosario and Edwin Howell of the NYPD. Opp. at 4. The officers handcuffed Plaintiff to his hospital bed. *Id.* Mr. Acevedo alleges that the officers arrested him without probable cause. *Id.* at 4–5. Harlem Hospital medical providers took X-rays of his injury. TAC at 5. Finding no fractures in his foot, the providers discharged Plaintiff into the custody of Officers Rosario and Howell. *Id.* at 5–6. They took him to a police station, where he remained for "about six [and a half hours]." *Id.* at 6.

After he was discharged, Plaintiff was "forced to struggle to walk" from the police car into the police station, before being "forc[ed] . . . into a holding cell that was very cold." *Id.* at 6. At the police station, Plaintiff was "forced to stand and walk from the holding cells to an interrogation room over and over again," despite the fact that he had shown the "officers that his bandages and ortho[pedic] shoe [were] soaked in blood badly, [and] stat[ed] that he was in massive pain." *Id.* Plaintiff alleges that he was "interrogated under duress" and made to suffer "cruel and unusual treatment." Opp. at 4, 7. When Plaintiff was released from custody, the officers "told [Plaintiff] to get the f**k out of their police station, and good luck on getting home[, while] laughing at [Plaintiff]." TAC at 7. Plaintiff alleges that his time in the custody of Officers Rosario and Howell caused him to "suffer significant . . . and likely . . . permanent nerv[e] damage[] [and] disfigurement to his injured foot[] from being forced to stand and walk on untreated injuries." *Id.* at 9.

---

[1] The facts relevant to this motion are drawn primarily from Plaintiff's Third Amended Complaint. Dkt. No. 48, ("TAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In light of Plaintiff's *pro se* status, the Court considers supplemental allegations made by Plaintiff in opposition to Defendant's motion. *See Collins v. Goord*, 438 F. Supp. 2d 399, 403 & n.1 (S.D.N.Y. 2006) (deeming factual allegations contained in pro se plaintiff's brief to "supplement" his pleading); *see also* Dkt. No. 73 at 1–11 ("Opp.").

Mr. Acevedo alleges that the officers' conduct was a violation of "regulation" and "custom" and a "misuse of their power." TAC at 15. He also alleges that the officers' conduct is an example of "a practice so consistent and widespread" that it "constitute[d] a custom or usage of which a supervising [policymaker] must have been aware." Opp. at 5. He also alleges that the conduct he experienced was the result of "a failure by policymakers to provide adequate training or supervision to [] subordinates to such an extent that it amount[ed] to deliberate indifference to the right[s] of those who come into contact with [those] municipal employees." *Id.*

On August 11, 2025, Mr. Acevedo returned to Harlem Hospital for a follow-up appointment. TAC at 7. Medical providers X-rayed his foot again and did not locate any fractures. *Id.* Four days later, Mr. Acevedo sought additional care from the emergency room at Mount Sinai Hospital. *Id.* at 8. Medical providers there determined that Plaintiff had several fractures in his foot and provided Mr. Acevedo the treatment he claims he had previously been denied. *Id.*

### B. Procedural History

#### 1. Plaintiff's Prior Complaints

Mr. Acevedo filed his initial complaint on January 23, 2024. Dkt. No. 1. That complaint identified the City as a defendant, but did not allege sufficient facts to state a claim of municipal liability against the City. *See generally id.* As a result, Chief Judge Laura T. Swain, to whom the case was then assigned, dismissed Plaintiff's claim against the City. Dkt. No. 6 at 5. Chief Judge Swain concluded that the initial complaint did not state a claim of municipal liability against the City because it did not allege sufficient facts to determine whether "any NYPD officer violated Plaintiff's constitutional rights, and subsequently, whether a City policy, custom, or practice caused constitutional harm." *Id.* Chief Judge Swain granted Plaintiff leave to amend his complaint to allow him to "allege additional facts to state a valid claim [of municipal liability] against the City of New York . . . ." *Id.* at 6.

Plaintiff filed his first amended complaint on May 28, 2024. Dkt. No. 7. This Court, having been assigned this case, dismissed his claims against the City. Dkt. No. 9. The Court reiterated that, to state a Section 1983 claim against a municipality, a plaintiff must "allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of plaintiff's constitutional rights." *Id.* at 3. The Court concluded that the first amended complaint did not "state facts suggesting that . . . the City of New York adopted a policy regarding the discharge of hospital patients into police custody." *Id.* at 3–4. In light of Plaintiff's *pro se* status, the Court granted Plaintiff leave to amend the complaint to allege additional facts to support his claim of municipal liability against the City. *Id.* at 5.

On August 8, 2024, Plaintiff filed his second amended complaint. Dkt. No. 10. The Court subsequently ordered the Corporation Counsel of the City of New York to provide the identities, shield numbers, and service addresses of the unidentified police officers. Dkt. No. 11. Plaintiff was granted leave to amend after he received this information. *Id.* He filed his third amended complaint on April 14, 2025. Dkt. No. 48. That is the operative complaint in this matter.

### 2. The City's Motion to Dismiss

On May 14, 2025, Defendant City of New York filed its motion to dismiss the claims made against it in the third amended complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 72 ("Moving Br."). The City construed Plaintiff's complaint as asserting a claim under 42 U.S.C. § 1983 and seeking to hold the City liable for the conduct of its employees on a theory of municipal liability. *Id.* at 2–3; *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). The City argued that there was no underlying constitutional violation supporting liability and that even if there were, Plaintiff "fail[ed] to allege that a policy or custom caused the alleged constitutional violation[s]." Moving Br. at 4. The City also construed Plaintiff's complaint as alleging New York state law claims against the City. *Id.* at 4–5. The City argued that these are

4

barred by New York's notice of claim requirement. *Id.* at 5.

Plaintiff filed his opposition on June 17, 2025, arguing that he has met the pleading standard established by *Monell. See generally* Opp. He argued that the City is liable for the unconstitutional acts of its employees because those acts were undertaken pursuant to a "custom or usage" of which a supervising policymaker "must have been aware," or, in the alternative, the conduct was the result of a failure to "train" or "supervise" employees that amounted to "deliberate indifference" to the rights of those with whom municipal employees will come into contact. *Id.* at 5. In response to the City's arguments in favor of dismissing any New York state law claims, Mr. Acevedo offered only that he had adequately pleaded a federal claim. *Id.* at 8.

On July 16, 2025, the City filed its reply. Dkt. No. 83. The reply reiterated that Plaintiff had not identified any policy or custom of the City sufficient to bring a claim of municipal liability. *Id.* at 1–3. The City also argued that it cannot be held liable for any acts of Harlem Hospital employees because those employes are employes of the New York City Health and Hospital Corporation ("H+H"), a legal entity separate and distinct from the City. *Id.* at 3–4. The City reiterated its argument that Plaintiff's state law claims are barred by the notice of claim requirement. *Id.* at 5.

## III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted). Second, a court determines

"whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Because he is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Id.* at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## IV.    DISCUSSION

The Court has reviewed the operative complaint and construes it to raise both federal and state law claims against the City of New York. The complaint expressly asserts a claim against the City under Section 1983. TAC at 2. In addition, the Court construes the complaint to assert tort claims against the City under New York state law, under a theory of *respondeat superior*. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157–58 (2d Cir. 2017).

Plaintiff has failed to plausibly plead a claim against the City under Section 1983 because he cannot hold the City liable for the actions of Harlem Hospital employees and because has failed to plausibly allege that the conduct of Officers Rosario and Howell was the result of an official policy or custom. He has also failed to plead any New York state law claims against the City because he has not pleaded that he served a notice of claim on the City as required by state law.

### A. Municipal Liability

Because Plaintiff fails to adequately plead facts supporting any theory of municipal liability, the Court dismisses his Section 1983 claims against the City. As a threshold matter, Plaintiff's claims against the City can only proceed under a theory of municipal liability. It is well settled that "a municipality cannot be made liable [under § 1983] by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). Rather, the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury." *Roe v. City of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks omitted). Therefore, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see Monell*, 436 U.S. at 690–91 (1978).

The Court will only analyze the City's liability based on the actions of the NYPD officers rather than the actions of the Harlem Hospital employees because the latter are employees of H+H, not the City of New York. *Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 43 (2d Cir. 1983). H+H is not an agency of the City. Rather, H+H is a "public benefit corporation created . . . pursuant to the New York City Health and Hospitals Corporation Act." *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 (S.D.N.Y. 1993) (citing N.Y. Unconsol. Laws §§ 7382 *et seq.*). As a result, "New York courts

consistently have held that the City is a separate legal entity from [H+H]." *Cabrera v. NYC*, 436 F. Supp. 2d 635, 641 (S.D.N.Y. 2006). H+H is a different municipal corporation, separately subject to *Monell* liability. *See Rookard*, 710 F.2d at 45. Therefore, Plaintiff cannot hold the City liable for the actions of H+H employees.

Plaintiff has not pleaded sufficient facts to establish that the NYPD officers' conduct constitutes an example of a "policy or custom." *Wray*, 490 F.3d at 195 (internal quotation marks omitted). A plaintiff may satisfy the "policy or custom" requirement in one of four ways: by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see Pembaur*, 475 U.S. at 483–84; (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690–91; or (4) a failure to properly train or supervise municipal employees that amounts to "deliberate indifference to the rights of persons with whom [municipal employees] come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996).

Plaintiff does not argue the existence of—and the facts he pleaded do not support—liability on the basis of the first two theories. Plaintiff does not allege that the police officers were acting pursuant to formal policy, nor does he identify any formal policies governing the conduct of police officers. *See generally* TAC. Nor does he allege that the officers were final municipal policymakers. *Id.* A final municipal policymaker is an individual "sufficiently high up in the municipal hierarchy that he [i]s responsible under state law for making policy in that area of the municipality's business." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 98 (2d Cir. 2020) (internal citations and quotation marks omitted). Plaintiff does not plead facts that suggest that Officers Howell or Rosario were responsible for making law enforcement policy for the City. *See generally* TAC.

Plaintiff has not alleged sufficient facts to establish either of the theories he does advance.

Plaintiff argues that the conduct he experienced satisfies the "policy or custom" requirement in one of two ways:  first, because it was an act performed pursuant to "custom or usage" of which a supervising policymaker "must have been aware"; second, because it was the result of a failure to "train" or "supervise" employees that amounted to "deliberate indifference."  Opp. at 5.  Because Plaintiff does not plead sufficient facts to support either theory, the Court grants the City's motion to dismiss Plaintiff's claim of municipal liability under *Monell.*[2]

### 1.  "Custom or Usage"

Plaintiff has not adequately pleaded facts to establish that the conduct of Officers Rosario and Howell was an example of an unlawful custom or usage.  To establish that unconstitutional conduct by subordinate municipal employees constitutes a "custom or usage" sufficient to hold a municipality liable, a plaintiff must establish that the practice is "so manifest as to imply the constructive acquiescence of senior policy-making officials."  *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297–98 (2d Cir. 2020) (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).  "In other words, there must be 'sufficient instances of tolerant awareness by supervisors of abusive conduct to support an inference that they had a policy, custom or usage of acquiescence in such abuse.'"  *Id.* at 298 (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 82 (2d Cir. 2012)).

Plaintiff's allegations fall short of this standard.  The operative complaint does not plead the existence of any widespread practice.  *See generally* TAC.  The complaint alleges nothing more than the conduct of two police officers on a single day.  *Id.*  Such allegations cannot sustain a *Monell* claim on the basis of the existence of an unwritten and unlawful custom.  *See Sorlucco*, 971 F.2d at 870; *Jones*, 691 F.3d at 85 (holding that two or three instances of unlawful conduct "fell far short of

---

[2] The Court need not determine whether Plaintiff has met his burden on causation or denial of a constitutional right because his claims do not satisfy the first requirement.  *See Fabian v. City of New York*, No. 16-CV-5296 (GHW), 2018 WL 2138619, at *6 (S.D.N.Y. May 9, 2018) (declining to determine whether plaintiffs had demonstrated that a disputed issue of fact existed because they "present[ed] no evidence of a formal policy or a pattern or practice" of the kind of violations alleged).

showing a policy, custom, or usage" and "showed no instances in which supervisors were aware of abuse").

## 2. Failure to Train or Supervise Officers

Plaintiff has not adequately pleaded facts to establish that the conduct of Officers Rosario and Howell was the result of a failure to train or supervise. A plaintiff can demonstrate *Monell* liability by pleading that the failure of a municipality to train or supervise its employees amounted to "deliberate indifference." "The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the city employees interact." *Wray*, 490 F.3d at 195. "To establish 'deliberate indifference,' a plaintiff must show that: [1] a policymaker knows 'to a moral certainty' that city employees will confront a particular situation; [2] the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation;' and [3] 'the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Id.* at 195–96 (quoting *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)).

In addition to pleading deliberate indifference, a plaintiff must plead facts specifying the failures to train or supervise. "[W]here . . . a city has a training program, a plaintiff must . . . 'identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.'" *Wray*, 490 F.3d at 196 (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004) (internal quotations omitted)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). A plaintiff can establish a failure to supervise by pleading facts demonstrating that the municipality has a pattern of failing to discipline employees who engage in unlawful behavior. A "'persistent failure to

10

discipline subordinates who violate civil rights' . . . can 'give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell.*'" *Lucente*, 980 F.3d at 298 (quoting *Batista*, 702 F.2d at 397). "Such inaction rises to the level of a municipal policy 'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" *Boddie v. City of New York*, No. 15-cv-4275, 2016 WL 1466555, at *3 (S.D.N.Y. Apr. 13, 2016) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)).

Plaintiff does not allege sufficient facts to sustain his claim based on a failure to train or supervise. He alleges that the City failed to "provide adequate training or supervision to [its] subordinates to such an extent that it amount[ed] to deliberate indifference." Opp. at 5. He does not allege any facts to support these purely "conclusory statements." *Iqbal*, 556 U.S. at 663. Mr. Acevedo does not identify a specific training program that was deficient, much less allege any specific issue with the City's training programs or "establish that that deficiency is 'closely related to the ultimate injury.'" *Wray*, 490 F.3d at 195 (quoting *Amnesty Am.*, 361 F.3d at 129). Although he alleges that that the City has not adequately investigated his claims against City employees, Opp. at 3, he only alleges a "single incident of illegality," insufficient to establish *Monell* liability for a failure to supervise, *Lucente*, 980 F.3d at 306. Mr. Acevedo's allegations are therefore insufficient to state a federal claim under 42 U.S.C. § 1983 against the City. Accordingly, the Court grants the City's motion to dismiss Plaintiff's federal claims.

### B.  State Law Claims

Plaintiff has not adequately stated any New York state law claims that his complaint can be construed to raise because he has not pleaded that he has served a notice of claim as required by New York law. Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law

§§ 50-e(1), 50-i(1); *C.S.A. Contracting Corp. v. New York City Sch. Constr. Auth.*, 833 N.E.2d 266, 268 (N.Y. 2005); *see also Fincher v. Cnty. of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (quoting *Fincher,* 979 F. Supp. at 1002). "The notice of claim must provide, among other things, the nature of the claim and must be filed within ninety days after the claim arises." *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 248 (E.D.N.Y. 2012) (citing N.Y. Gen. Mun. Law § 50-e). "In addition, the plaintiff must plead in his complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim." *Id.* (citing N.Y. Gen. Mun. Law § 50-i). "'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action' for lack of subject-matter jurisdiction." *Tulino v. City of New York*, No. 15-cv-7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (quoting *AT&T Co. v. N.Y.C. Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)).

Plaintiff is correct that the notice-of-claim requirement does not apply to federal claims brought under Section 1983. *See, e.g., Bordeau v. Metro. Transit Auth.*, No. 06-cv-6781, 2008 WL 4455590, at *1 (E.D.N.Y. Sept. 30, 2008). However, "in a federal court, state notice-of-claim statutes apply to *state*-law claims." *Hardy*, 164 F.3d at 793 (emphasis in original) (citation omitted); *see also Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) ("The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action.' (quoting *Fincher*, 979 F. Supp. at 1002)). Accordingly, Plaintiff's New York state law claims must be dismissed.

### C.  Leave to Amend

The Court will not grant Plaintiff leave to amend his federal claims against the City because any further amendment would be futile.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defect, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ."  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224– 25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).  "[R]epeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998).  "In general, when assessing whether an amended complaint would state a claim, [courts] consider the proposed amendments . . . along with the remainder of the complaint."  *Pyskaty*, 856 F.3d at 225 (internal quotations omitted).  "Although courts commonly look to proposed amendments to determine futility, . . . courts may consider all possible amendments when determining futility." *Panther Partners Inc. v. Ikanos Commc'ns., Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (unpublished).

Here, the Court cannot conclude that any amendment could cure the deficiencies identified. Plaintiff has had the benefit of two rulings addressing his federal claims against the City.  *See* Dkt. Nos. 6, 9.  Both rulings identified defects in Plaintiff's federal claims against the City and granted Plaintiff leave to amend to cure these defects.  *See* Dkt. No. 6 at 6; Dkt. No. 9 at 4–5.  As explained, Plaintiff has not cured these defects.  Even accounting for factual allegations Mr. Acevedo first

introduced in his brief in opposition, he has not proposed additional allegations that would affect the Court's determination that there is no basis to find the City liable under any theory of municipal liability. Thus, further amendment of Plaintiff's complaint would be futile. Accordingly, the Court dismisses Plaintiff's federal claims against the City of New York with prejudice.

The Court will, however, grant Mr. Acevedo leave to amend his state law claims against the City to cure his failure to plead facts related to the notice of claim requirement. Neither of the prior rulings addressed the notice of claim requirement under state law. *See* Dkt. Nos. 6, 9. In light of Plaintiff's pro se status, the Court dismisses his New York state law claims against the City without prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendant City of New York's motion to dismiss is GRANTED. Plaintiff's federal claims are dismissed with prejudice, and his New York state law claims are dismissed without prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Plaintiff is granted leave to file an amended complaint to correct the deficiencies identified with respect to his New York state law claims against the City. Any amended complaint must be filed no later than thirty days from the entry of this order.

The Court requests that counsel for Defendant provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 60, to terminate Defendant City of New York from this case, and to mail a copy of this order to Plaintiff by certified mail.

SO ORDERED.

Dated: September 29, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge