UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

FELIPE ACEVEDO,

                              Plaintiff,

                   -v-

CITY OF NEW YORK, *et al.*,

                          Defendants.

------------------------------------------------------------------ X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #: _____**
**DATE FILED: 10/1/2025**

1:24-cv-558-GHW

MEMORANDUM OPINION &
ORDER

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

On August 6, 2023, Felipe Acevedo was shot in the foot by an unknown assailant. That same evening, he was taken to the Harlem Hospital Emergency Room for care. During this visit, he was handcuffed to his hospital bed and surveilled by two New York City Police Department ("NYPD") officers. Harlem Hospital medical staff took an X-ray of his foot, which did not show a fracture. Within a few hours of being admitted, Mr. Acevedo was discharged into police custody despite being in excruciating pain and struggling to walk from his injuries. He was given a cane and orthopedic shoe and instructions to take over-the-counter pain medication and to attend a follow-up appointment. After over six hours in police custody, he was released and went home. In continued pain even after a follow-up appointment at Harlem Hospital, Mr. Acevedo visited Mount Sinai Hospital for a second opinion on August 15, 2023. At Mount Sinai, medical staff observed him overnight and took additional images of his foot, revealing that he had sustained several fractures. The Mount Sinai providers prescribed him oxycodone and provided him crutches. In a follow up appointment, they prescribed him physical therapy and provided him a walking boot.

Mr. Acevedo alleges that his medical providers during both visits to Harlem Hospital—Dr. Katherine Bruce, Dr. Samantha Revello, Dr. Rajesh Dhillon, Dr. Sukhman Kaur, Dr. Cameron

Wilkinson, and Dr. Sebastian Rueda Valdivieso—violated his constitutional rights by being deliberately indifferent to his serious medical needs. He also seeks to hold Defendant New York City Health + Hospitals ("H+H") liable for the acts of its employees. He brings his claims against all defendants under 42 U.S.C. § 1983. Defendants H+H, Bruce, and Valdivieso (collectively, the "Moving Defendants") moved to dismiss Plaintiff's claims. Because Mr. Acevedo has only adequately pleaded that Dr. Bruce was deliberately indifferent to his medical needs and has not adequately pleaded any possible New York state law claims, the Moving Defendants' motion to dismiss the claims against them is GRANTED in part and DENIED in part.

## II.    BACKGROUND

### A.    Facts[1]

On August 6, 2023, Plaintiff was taken to the Harlem Hospital Emergency Room after he was shot in the foot. TAC at 5; *see also* Dkt. No. 10 at 16–41 ("Harlem Hospital Records"). At the hospital, Mr. Acevedo was accompanied by NYPD officers and handcuffed to his hospital bed. Opp. at 3. Mr. Acevedo alleges that the NYPD officers were "walking back and forth" in the emergency room and "watching" him. *Id.* at 8. Mr. Acevedo alleges that the handcuffs and police surveillance "ma[de] him look like a criminal" in the eyes of his medical providers. *Id.* During this visit to Harlem Hospital, Mr. Acevedo was in the care of Dr. Katherine Bruce, Dr. Samantha Revello, Dr. Rajesh Dhillon, and Dr. Sukhman Kaur (collectively, the "First Visit Defendants"), all members of Harlem Hospital's medical staff. TAC at 5.

Dr. Bruce and Dr. Revello had "direct contact and participation" in Mr. Acevedo's care.

---

[1] The facts relevant to this motion are drawn primarily from Plaintiff's third amended complaint. Dkt. No. 48, ("TAC"), and are accepted as true for the purposes of this motion. *See, e.g., Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In light of Plaintiff's *pro se* status, the Court considers supplemental allegations made by Plaintiff in opposition to the moving Defendants' motion, Dkt. No. 73 at 19–33 ("Opp."). *See Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002) (deeming factual allegations contained in pro se plaintiff's brief to "supplement" his pleading).

Opp. at 5; *see* Harlem Hospital Records at 4. Dr. Revello, Dr. Dhillon, and Dr. Kaur took X-rays of the injury. TAC at 5. Based on those X-rays, the First Visit Defendants concluded that there were no fractures in his foot. *Id.*; *see also* Harlem Hospital Records at 10, 24.

Within "just a few hours" of being admitted, Plaintiff was discharged into police custody. TAC at 5. Plaintiff was given a cane and an orthopedic shoe to manage his pain, as well as "instruction[s] to take Tylenol or Motrin" and to attend a follow-up appointment. *Id.* at 5, 7; *see also* Harlem Hospital Records at 10. He did not receive a cast, crutches, a splint, or surgery. TAC at 5. Mr. Acevedo alleges that Dr. Bruce and Dr. Revello made the decision to discharge him "prematurely." Opp. at 5. He alleges he was still "struggling to walk" and in "excruciating pain." TAC at 6.

After over six hours of questioning at a police station, during which time he was repeatedly "forced to stand and walk from . . . holding cells to [an] interrogation room," Mr. Acevedo was released and went home. *Id.* at 6–7.

On August 11, 2023, Plaintiff returned to Harlem Hospital for a follow-up appointment, "still struggling to walk." *Id.* at 7. Harlem Hospital employees Dr. Cameron Wilkinson and Dr. Sebastian Rueda Valdivieso (collectively, the "Second Visit Defendants") managed his care. *Id.* Plaintiff alerted his medical providers "that his foot was still in excruciating pain." *Id.* In response, the Second Visit Defendants took additional X-rays of Plaintiff's foot, finding "once again . . . that the X-rays showed no fractured/broken bones." *Id.* Plaintiff requested stronger pain medication than he had been instructed to take during his first visit, but his request was denied. *Id.* He also requested crutches "to be able to not walk on his injuries." *Id.* The Second Visit Defendants provided him with crutches. *Id.* He alleges that these crutches were meant "for someone that was taller than him." *Id.* Mr. Acevedo alleges that the decisions made related to his care in both visits to Harlem Hospital were acts of official policymaking because H+H "delegated . . . authority to set

policy" to the subordinate medical providers.  Opp. at 7, 10.

Plaintiff alleges that, as a result of his inadequate treatment at Harlem Hospital and being made to walk on his injuries, he has experienced "permanent disfigurement, scarring, physical trauma, permanent pain and suffering, mental pain, . . . mental trauma, flashbacks, permanent nerv[e] damage[], paranoid condition, [and] emotional trauma."  TAC at 9.

On August 15, 2023, Mr. Acevedo—still in pain—sought care at the Mount Sinai Hospital Emergency Room.  TAC at 8; *see also* Dkt. No. 10 at 43–86 ("Mount Sinai Records").  He was admitted for overnight observation.  TAC at 8.  After further imaging, medical providers at Mount Sinai found several fractures in Plaintiff's foot.  *Id.*  Plaintiff was given a splint, properly sized crutches, "oxycodone (Percocet) for . . . pain management."  *Id.*  In a follow-up appointment, providers at Mount Sinai hospital gave Mr. Acevedo a "CAM boot" and a prescription for physical therapy.  *Id.*; *see also* Mount Sinai Records.

### B.  Procedural History

#### 1.  Plaintiff's Initial Complaints

Plaintiff, acting *pro se*, filed his initial complaint on January 23, 2024.  Dkt. No. 1.  He requested leave to proceed *in forma pauperis*.  Dkt. No. 2.  That request was granted.  Dkt. No. 5.  That initial complaint identified Harlem Hospital as a defendant.  Chief Judge Laura T. Swain, to whom the case was then assigned, construed the complaint as asserting a claim of municipal liability against H+H, which operates Harlem Hospital.  Dkt. No. 6 at 3–4.  Chief Judge Swain dismissed Plaintiff's claim against H+H because the complaint did not "allege an underlying constitutional violation with respect to the care he received at Harlem Hospital."  *Id.* at 5.  Chief Judge Swain granted Plaintiff leave to amend his complaint to allow him to "allege additional facts to state a valid claim [of municipal liability] against . . . H+H . . . ."  *Id.* at 6.

Plaintiff filed his first amended complaint on May 28, 2024.  Dkt. No. 7.  The Court, having

been assigned this case, dismissed that complaint and granted leave to amend to allege further facts

in support of his claims that his constitutional rights were violated. Dkt. No. 9. The Court

reiterated that, to state a Section 1983 claim against a municipal entity, a plaintiff must "allege facts

showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom,

or practice caused the violation of plaintiff's constitutional rights." *Id.* at 3. In light of Plaintiff's *pro

se* status, the Court granted Plaintiff leave to amend the complaint to allege facts to support his

claims against H+H "and/or any individual defendant who was personally involved in violating his

constitutional rights." *Id.* at 5.

On August 8, 2024, Plaintiff filed his second amended complaint. Dkt. No. 10. The Court

subsequently ordered the Corporation Counsel of the City of New York to provide the identities,

shield numbers, and service addresses of the unidentified police officers involved in his Harlem

Hospital visit and subsequent interrogation. Dkt. No. 11. Plaintiff was granted leave to amend the

complaint after he received that information. *Id.*

Mr. Acevedo filed his third amended complaint on April 14, 2025. Dkt. No. 48. As relevant

to the Moving Defendants' motion to dismiss, that complaint named as defendants the First Visit

Defendants, the Second Visit Defendants, and H+H (collectively, the "Medical Defendants"). *Id.* at

1. That is the operative complaint in this matter.

### 2. The Motion to Dismiss

On May 13, 2025, the Moving Defendants filed a motion to dismiss the claims made against

them under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 64 ("Moving Br."). The Moving

Defendants argued that Mr. Acevedo had not stated a claim under either the Eighth or the

Fourteenth Amendment because he was neither a prisoner nor a pretrial detainee when he received

care at Harlem Hospital. *Id.* at 4–5. The Moving Defendants also argued that even if Mr. Acevedo

had adequately pleaded that he was in state custody, he had not stated a claim for deliberate

indifference because his allegations established nothing more than his disagreement with the treatment he received. *Id.* at 6–7. The Moving Defendants also argued that even accepting the Plaintiff's allegations as true, Defendants Bruce and Valdivieso are entitled to qualified immunity because their conduct was objectively reasonable. *Id.* at 8–9. With respect to H+H, the Moving Defendants argued that Mr. Acevedo had not stated a claim for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Moving Br. at 9–12. The Moving Defendants argued that Plaintiff had not alleged that there was a policy, practice, or custom such that H+H should be held liable for the acts of its employees. *Id.* With respect to the non-moving Medical Defendants, the Moving Defendants argued that the Court should dismiss the Section 1983 claims asserted against those Defendants under the Court's authority to dismiss a proceeding *in forma pauperis* when a plaintiff fails to state a claim. *Id.* at 12–13; *see also* 28 U.S.C. § 1915(e)(2)(B)(ii). Finally, the Moving Defendants argued that the Court should decline to exercise supplemental jurisdiction over any state law claims in the event that the federal claims are dismissed. Moving Br. at 13.[2]

Plaintiff filed his opposition on June 17, 2025. *See generally* Opp. He first argued that he was a "in custody and was a prisoner" during his first visit to Harlem Hospital because he was accompanied by NYPD officers and was handcuffed to his hospital bed. *Id.* at 2–3. He reiterated his argument that his medical providers displayed deliberate indifference to his medical needs during both of his visits to Harlem Hospital. *Id.* at 4–7. As to the first visit, he alleged that Defendants Bruce and Revello are "medical special[ists]" who "knew of Plaintiff's condition" and "intentionally and recklessly failed to act with the proper [and] reasonable care to mitigate the risk that the condition posed." *Id.* at 4. As to the second visit, Mr. Acevedo alleged that the Second Visit

---

[2] The Moving Defendants' memorandum references "any treatment the plaintiff may have received at Lincoln Hospital" as having "absolutely no connection to plaintiff's Federal claims asserted against the codefendants." Moving Br. at 13. Nowhere in the complaint does Plaintiff allege that he was treated at "Lincoln Hospital." *See generally* TAC.

Defendants "did not provide the Plaintiff with the proper medical care at all." *Id.* at 6. Next, he argued that H+H has "final authority" to establish municipal policy and that they endorsed the actions of the defendant medical providers. *Id.* at 7; *see also id.* at 10.

Plaintiff then argued that Dr. Bruce and Dr. Valdivieso are not entitled to qualified immunity because they had actual knowledge that their conduct violated his constitutional rights. *Id.* at 8–10. In response to the Moving Defendant's request to dismiss claims against the non-moving Medical Defendants, Plaintiff argued that defendants who could not be served were fired or resigned for providing inadequate care to Plaintiff and others. *Id.* at 11–13. Finally, Plaintiff argued that his state law claims should not be dismissed because he had stated a claim under Section 1983. *Id.* at 13–14.

On June 26, 2025, the Moving Defendants filed their reply. Dkt. No. 77 ("Reply Br."). Renewing their argument that Plaintiff was not a pretrial detainee, the Moving Defendants argued that the hospital was not a facility in which Plaintiff could have been held in custody as a pretrial detainee. *Id.* at 1–3. The Moving Defendants repeated their argument that Plaintiff had not pleaded facts to support his deliberate indifference claim. *Id.* at 3–5. Responding to Plaintiff's allegations concerning the mental state of his providers, the Moving Defendants argued that Defendant Bruce and Defendant Valdivieso are entitled to qualified immunity because their actions—even if the product of "mistaken judgment"—were nonetheless "objectively reasonable." *Id.* at 5–6. Finally, the Moving Defendants argued that the allegations in the operative complaint "even if supplemented" by allegations in Plaintiff's opposition papers are insufficient to state a claim of municipal liability against H+H. *Id.* at 6–7. They repeated their arguments that the third amended complaint should be dismissed against the non-moving Medical Defendants and that the Court should decline to exercise supplemental jurisdiction over Mr. Acevedo's state law claims and argued that Plaintiff did not "meaningfully address" the arguments raised in their moving brief. *Id.* at 7–8.

On July 22, 2025, Mr. Acevedo filed a sur-reply without requesting leave of court. Dkt. No.

84. The Court is under no obligation to accept an unauthorized brief. *See Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 307 (S.D.N.Y. 2014). The Court has nonetheless reviewed Plaintiff's sur-reply and considered his arguments in resolving the Moving Defendants' motion to dismiss.

## III.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Second, a court must determine "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Ultimately, determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). A document is considered

"integral" to the complaint where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in the complaint or on which plaintiff relied in drafting the complaint). "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and it must be clear that "there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco*, 622 F.3d at 111 (quoting *Beer*, 463 F.3d at 134).

Here, the Court will consider the Harlem Hospital Records and the Mount Sinai Records in deciding the Moving Defendants' motion to dismiss. Mr. Acevedo references both sets of records throughout the third amended complaint. *See, e.g.*, TAC at 5 (referencing Harlem Hospital Records); *id.* at 8 (referencing Mount Sinai Records). The Moving Defendants do not dispute their authenticity, accuracy, or relevance, and themselves reference the records in their motion papers. Reply Br. at 6**.** Therefore, the Court may properly consider both sets of records in resolving the motion to dismiss.

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)). This mandate "applies with particular force when a plaintiff's civil rights are at issue." *Bell v. Jendell*, 980 F. Supp. 2d 555, 558 (S.D.N.Y. 2013) (quoting *Maisonet v. Metro. Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009)). Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v.*

*New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994)).  However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell*, 980 F. Supp. 2d at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F.Supp.3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

Because Plaintiff is proceeding *in forma pauperis*, the Court has an obligation to determine whether to dismiss portions of his complaint *sua sponte*.  The Court must dismiss a complaint filed *in forma pauperis* that "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).  "As under the 12(b)(6) standard, [a plaintiff's] *pro se* status obligates [the] Court to read [the plaintiff's] papers liberally and to interpret them as raising the strongest arguments they suggest." *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 125 (E.D.N.Y. 2011).  "If a liberal reading of the pleading 'gives any indication that a valid claim might be stated,' this Court must grant leave to amend." *Id.* (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

## IV. DISCUSSION

### A. Federal Claims

Plaintiff has pleaded sufficient facts to sustain his claim of deliberate indifference against Dr. Bruce but has not pleaded sufficient facts to state a Section 1983 claim against any other Moving Defendant or Defendants Wilkinson, Kaur, and Dhillon.  Plaintiff's third amended complaint raises claims against the Medical Defendants for violations of Plaintiff's constitutional rights under Section 1983.  To state a claim under Section 1983, a plaintiff must allege that the defendant "acted under

color of state law and that [the defendant] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). "Section 1983 does not in and of itself create any substantive rights; rather, a plaintiff bringing a § 1983 claim must demonstrate a violation of an independent federal constitutional or statutory right." *Watts v. New York City Police Dep't*, 100 F. Supp. 3d 314, 322 (S.D.N.Y. 2015) (citing *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979)).

### 1. Under Color of State Law

Plaintiff has adequately pleaded that the First Visit Defendants and the Second Visit Defendants were acting under color of state law. An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson*, 454 U.S. 312, 317–18 (1981) (citation omitted). Therefore, a violation of a federal constitutional or statutory right is actionable under Section 1983 when that violation is the result of "the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982). "[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S. 42, 50 (1988); *see also Lugar*, 457 U.S. at 937.

The First Visit Defendants and the Second Visit Defendants were acting under color of state law during their treatment of Mr. Acevedo because they were acting in their capacities as employees of H+H. H+H is a "public benefit corporation created to provide health and medical services to New York City residents pursuant to the New York City Health and Hospitals Corporation Act." *Simpkins v. Bellevue Hosp.*, 832 F. Supp. 69, 73 (S.D.N.Y. 1993) (citing N.Y. Unconsol. Laws § 7382); *see also Hardy v. New York City Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). As a municipal corporation, H+H and its employees are state actors for purposes of Section 1983. *See*

*Rookard v. Health and Hosps. Corp.*, 710 F.2d 41, 45 (2d Cir. 1983); N.Y. Pub. Auth. Law § 1261(16) (defining "state agency" to include any "public benefit corporation . . . of the state"). Plaintiff's allegations suggest that the relevant actions of the First Visit Defendants and the Second Visit Defendants were taken while those defendants were acting in their roles as employees of H+H. *See, e.g.,* TAC at 5. Accordingly, Plaintiff has satisfied the first element of his Section 1983 claims.

### 2. Deprivation of Constitutional Rights

#### a. Involuntary Custody

As a threshold matter, the Court construes Plaintiff's third amended complaint to be raising claims under Section 1983 for violations of Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment because he had not been convicted during his visits to Harlem Hospital. While "[a]s a general matter, the state is under no constitutional duty to provide substantive services to free persons within its borders, . . . when a person is involuntarily held in state custody, and thus wholly dependent upon the state, the state takes on an affirmative duty to provide for his or her 'safety and general well-being.'" *Charles v. Orange Cnty.*, 925 F.3d 73, 81–82 (2d Cir. 2018) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)). The Eighth Amendment protects prisoners from "cruel and unusual punishments." U.S. Const. amend. VIII. However, because "the Eighth Amendment's protection does not apply 'until after conviction and sentence,'" the Amendment does not protect pretrial detainees. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Graham v. Connor*, 490 U.S. 386, 392 n.6 (1989)). Instead, "a pretrial detainee's claims . . . are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Because Plaintiff does not allege that he had been convicted and sentenced during the events giving rise to his complaint, his claims of violations of his constitutional rights can only arise under the Due Process Clause of the Fourteenth Amendment. *See id.* ("A

pretrial detainee's claims are evaluated under the Due Process Clause because, pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.") (internal quotation marks and brackets omitted).

Mr. Acevedo can raise claims under the Due Process Clause of the Fourteenth Amendment for events that took place during his first visit to Harlem Hospital because he was involuntarily held in state custody during that visit.  "When the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clause." *Jacobs v. Ramirez*, 400 F.3d 105, 106 (2d Cir. 2005) (internal quotations omitted).  To determine if the state has a duty to an individual under the Due Process Clause, the Second Circuit has focused on whether an individual is in the "involuntary custody" of the state.  *Matican v. City of New York*, 524 F.3d 151, 156 (2d Cir. 2008).  In other words, "[t]he affirmative duty to protect arises . . . from the limitation which [the State] has imposed on [an individual's] freedom to act on his own behalf." *Jacobs*, 400 F.3d at 107 (quoting *DeShaney*, 489 U.S. at 200).  Plaintiff has adequately pleaded that he was in involuntary custody during his first visit to Harlem Hospital.  Plaintiff alleges that when he was first treated "at the Harlem Hospital Emergency Room for gunshot wounds, [he] was handcuffed to the hospital bed" while NYPD officers surveilled him.  Opp. at 3.  Plaintiff further alleges that he was discharged to the custody of NYPD officers, "placed in the back of a NYPD official's car," and "taken to [a] police station to be processed and interrogated."  *Id.*  Thus, from the moment he was brought to Harlem Hospital for his first visit, to the moment the NYPD officers released him from a police station, he was not free to leave and was thus in the involuntary custody of the state.  Accordingly, the Court analyzes the conduct of the First Visit Defendants under the Due Process Clause of the Fourteenth Amendment.

However, because Plaintiff does not allege any facts to suggest that he was in involuntary custody during his follow-up visit to Harlem Hospital, the Court dismisses his federal claims against the Second Visit Defendants.  In contrast to his allegations regarding the presence of NYPD officers and handcuffs, Mr. Acevedo does not allege any facts that would suggest that he was in involuntary custody during his second visit to Harlem Hospital.  *See generally* TAC.  Mr. Acevedo alleges that "returned to Harlem Hospital for a follow up," and does not allege that the state compelled him to do so.  *Id.* at 7.  Accordingly, the Court dismisses his claims against Dr. Valdivieso and Dr. Wilkinson.

The Moving Defendants' argument that Mr. Acevedo does not receive the protection of the Fourteenth Amendment because he was not "detained in a facility for violations of criminal [laws]" imposes limitations on an individual's right to due process that the Second Circuit has never endorsed.  Reply Br. at 2.  In their reply, the Moving Defendants argue that Plaintiff is not a pretrial detainee because he was in a hospital and had not been arrested for a crime.  *Id.* at 2–3.  The Second Circuit has not imposed a location or a status requirement on when an individual receives the protection of the Due Process Clause of the Fourteenth Amendment.  Rather, as the Moving Defendants' Moving Brief correctly points out, the inquiry to determine if an individual may bring a claim alleging violations of his right to substantive due process is whether that person was in "involuntary custody."  Moving Br. at 5 (collecting cases).  Even assuming that he was not a charged with a crime and awaiting trial, Mr. Acevedo has plausibly pleaded that he was in involuntary custody during his first visit at Harlem Hospital.  Thus, he was protected by the Due Process Clause of the Fourteenth Amendment during that visit.

### b.  Personal Involvement

Plaintiff has not adequately pleaded that Dr. Kaur or Dr. Dhillon were personally involved in any alleged constitutional deprivations.  The "personal involvement of defendants in alleged

14

constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quotation marks omitted)). Plaintiff alleges that Dr. Revello and Dr. Bruce had "direct contact and participation" with his medical care. Opp. at 5. He alleges that those defendants made the decision to discharge him with a cane, an orthopedic shoe, and instructions to take Tylenol. *Id.* The only involvement Plaintiff alleges Dr. Kaur and Dr. Dhillon had in his care was their taking and assessment of X-rays during the first visit. TAC at 5. He does not allege that they knew about his condition and still chose to discharge him. *Id.* At most, their failure to diagnose his broken foot amounts to medical malpractice. *See Johnson v. Elmhurst Hosp. Ctr.*, No. 10-cv-3406 (JG), 2010 WL 5207600, at *3 (E.D.N.Y. Dec. 16, 2010) (holding that "misread[ing] test results" and consequently "fail[ing] to diagnose spinal fracture . . . amount to nothing more than medical malpractice"). Even assuming that the failure to diagnose was negligent, such negligence is insufficient to plead deliberate indifference. Accordingly, Plaintiff's Section 1983 claims against Dr. Kaur and Dr. Dhillon must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

    **c. Deliberate Indifference to Serious Medical Needs**

    Plaintiff has adequately pleaded that Dr. Bruce was deliberately indifferent to his medical needs, in violation of his constitutional rights. "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Claims of deliberate indifference to serious medical needs are analyzed under a two-pronged standard: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.* "[T]o establish an objective deprivation, '[an] inmate

must show that the conditions [of confinement], either alone or in combination, pose[d] an unreasonable risk of serious damage to his health.'" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). On the subjective prong, deliberate indifference is "roughly" equivalent to recklessness. *Id.* Recklessness "can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Id.*

        **i.   Objectively Serious Deprivation**

Plaintiff's gunshot wound and his broken foot were sufficiently serious conditions such that the alleged deprivation of care amounted to an objectively serious deprivation. "Determining whether a deprivation [of medical care] is an objectively serious deprivation entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, courts must first determine "whether the prisoner was actually deprived of adequate medical care." *Id.* An "official's duty is only to provide reasonable care"; "officials who act reasonably in response to an inmate-health risk cannot be found liable . . . ." *Id.* at 279–80 (internal brackets omitted). "[C]onversely, failing to take reasonable measures in response to a medical condition can lead to liability." *Id.* at 280 (internal quotations omitted). Second, the objective test asks whether the inadequacy in medical care is "sufficiently serious." *Id.* "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30. To determine if the medical need is "sufficiently serious," courts "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86. "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower" and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (internal quotations

omitted).  "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm."  *Charles*, 925 F.3d at 86.

Plaintiff has adequately pleaded that he was actually deprived of medical care for a sufficiently serious condition.  Each of the factors that courts consider—and the consequences of the deprivation—demonstrate that the deprivation was objectively serious.  Mr. Acevedo alleges that he had a gunshot wound resulting in a broken foot at the time he first received care at Harlem Hospital.  TAC at 5.  He alleges that he was in "excruciating pain" and struggling to walk, even after the care he received.  *Id.* at 6.  Mr. Acevedo alleges that the First Visit Defendants misdiagnosed his broken foot, discharged him after a few hours into the custody of police officers, provided him with an "orth[pedic] shoe" and a "cane" to manage the pain cane, and instructed Plaintiff to take—but did not provide—over-the-counter pain medication.  TAC at 5.  Several days later, providers at Mount Sinai diagnosed Plaintiff's fractures, observed Plaintiff overnight, provided Plaintiff crutches and a splint, prescribed pain medication, and provided follow-up care.  *Id.* at 8.  He alleges that the failure to provide the type of care he received at Mount Sinai resulted in extreme pain, "permanent nerv[e] damage[]," and "disfigurement" as a result of needing to stand and walk on his injuries.  *Id.* at 9.  Plaintiff has therefore pleaded facts demonstrating that the "actual medical consequences" of the alleged delay in medical care resulted in "chronic and substantial pain" that affected his daily activities.  *Charles*, 925 F.3d at 86.

### ii.  Deliberate Indifference

Plaintiff has adequately pleaded that Dr. Bruce acted with deliberate indifference. "Deliberate indifference . . . can be established by either a subjective or objective standard."  *Charles*, 925 F.3d at 87.  "A plaintiff can prove deliberate indifference by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the

pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety.'" *Id.* (quoting *Darnell*, 849 F.3d at 35 (emphasis in original)). Thus, a plaintiff alleging that a medical provider was deliberately indifferent to his medical needs "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* (emphasis in original).

Even if a plaintiff alleges that a medical provider was deliberately indifferent under the objective standard, he must plead sufficient facts to establish "something more than mere negligence"; "mere medical malpractice is not tantamount to deliberate indifference." *Charles*, 925 F.3d at 87 (internal quotation marks omitted). However, malpractice "may rise to the level of deliberate indifference when it involves culpable recklessness, i.e., an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Id.* (internal quotation marks omitted). "Whether the [defendant] knew or should have known of the substantial risk of harm to [a] detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 842 (1994)). "'A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer,* 511 U.S. at 842).

"Determining whether a reasonable medical provider would expect the conduct to result in excessive risk, as opposed to some lower baseline level of risk associated with any negligent medical conduct, may be difficult in the context of a motion to dismiss—a stage at which the court does not have the benefit of expert opinion." *Davis v. McCready*, 283 F. Supp. 3d 108, 122 (S.D.N.Y. 2017). Following the Second Circuit's modification of the standard under which courts evaluate the *mens rea* prong in *Darnell*, "the court is now required to evaluate whether the risk associated with the

negligent conduct would reasonably be expected to be excessive." *Id.* When the factual allegations in the complaint do not obviously point "to what a defendant *did in fact* know," the pleadings "may require a certain level of medical knowledge in order to determine what a reasonable medical professional in the circumstances *would have reason* to know." *Id.* (emphasis in original).

However, "even under the more onerous subjective test, a plaintiff [can] surpass a motion to dismiss by alleging that a medical professional consciously chose 'an easier and less efficacious' treatment plan." *Id.* at 121 (quoting *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). A plaintiff further must allege that this conscious choice was due to an improper motive such that the decision was not one driven by sound medical judgment. *Chance*, 143 F.3d at 703 (finding that a treatment decision driven by cost savings evinced deliberate indifference). "Mere disagreement over the proper treatment does not create a constitutional claim . . . [s]o long as the treatment given is adequate." *Id.* "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Id.* Thus, even under the subjective standard for demonstrating deliberate indifference, the provision of some treatment does not, as a matter of law, defeat a claim of deliberate indifference. *See Price v. Reilly*, 697 F. Supp. 2d 344, 364 (E.D.N.Y. 2010) (Bianco, J.) ("The fact that defendants offered some treatment in response to plaintiff's complaints does not as a matter of law establish that they had no subjectively culpable intent.").

Drawing all reasonable factual inferences in Plaintiff's favor, the Court cannot conclude that Dr. Bruce's care of Mr. Acevedo amounted to mere negligence under the objective standard of deliberate indifference. A defendant's knowledge that there was a substantial risk of harm posed by failing to act can be inferred from circumstantial evidence, including that the risk was obvious. *Charles*, 925 F.3d at 87. Mr. Acevedo alleges that he had a gunshot wound, and medical records filed alongside his pleadings indicate that Dr. Bruce was aware of this injury, even if Dr. Bruce was not

19

aware that the gunshot had resulted in a broken foot.  TAC at 5; *see also* Harlem Hospital Records at 7–8 (images of Plaintiff's foot showing gunshot wound).  Mr. Acevedo alleges that at the time of his discharge, he was in "excruciating pain" and "struggling to walk."[3]  TAC at 6.  Accepting these allegations as true, Plaintiff's inability to walk without obvious pain with the provided orthopedic shoe and cane, coupled with the Dr. Bruce's knowledge of his gunshot wound and her training as a "medical special[ist]," Opp. at 4, all point to the plausible inference that Dr. Bruce knew or should have known that not providing further medical care posed a substantial risk of permanent damage. *See Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 137 (2d Cir. 2025) (vacating dismissal of § 1983 claim because, given the defendant's medical specialty and the plaintiff's medical test results, "a reasonable factfinder could infer from the complaint" that the defendant's omissions "evinced deliberate indifference toward [the] risk" that the plaintiff had cancer (citing *Chance*, 143 F.3d at 703)); *cf. Gabriel v. Cnty. of Herkimer*, 889 F. Supp. 2d 374, 398 (N.D.N.Y. 2012) (holding, on a motion for summary judgment, that based on evidence of "obvious serious distress," coupled with Defendant's medical training and general awareness of the plaintiff's medical condition, "could cause a reasonable juror to conclude that [the defendant]" was deliberately indifferent under the Eighth Amendment standard).

Even under the more demanding subjective standard, Plaintiff has plausibly pleaded that Dr. Bruce consciously chose an easier and less efficacious course of care due to an improper motive.  A plaintiff can plausibly plead that the challenged treatment was easier and less efficacious by alleging that other treatment he received was more effective and comprehensive.  *See Stevens v Goord*, 535 F.

---

[3] The hospital records and Mr. Acevedo's pleadings differ in whether he was in pain at the time of discharge. *Compare* Harlem Hospital Records at 10 ("Patient discharged to police custody in no acute distress"), *with* TAC at 6 (alleging that at the time of his discharge, Plaintiff was in "excruciating pain" and "struggling to walk.").  However, given that Mr. Acevedo further alleges that the walking he did at the police station was painful and resulted in him bleeding through his bandages, it is plausible that the note in the Harlem Hospital medical records does not accurately capture is physical state.  TAC at 6.

Supp. 2d 373, 388 (S.D.N.Y. 2008) ("[A physician's] subsequent evaluation of Plaintiff . . . and treatment of his . . . ailments . . . demonstrates that Plaintiff's condition was readily treatable by a physician familiar with . . . [Plaintiff's conditions]").  Here, Mr. Acevedo alleges that he received subsequent care at Mt. Sinai hospital.  TAC at 8.  That care included overnight observation and the provision of a more comprehensive pain management regimen, including crutches and prescription pain medication, and a physical therapy prescription.  *Id.*  The Moving Defendants are correct that without more, the allegation that different treatment was needed could be construed as "mere disagreement" over the proper treatment, insufficient to state a claim under Section 1983.  *See Green v. Westchester Cnty.*, No. 19-cv-307, 2020 WL 5603479, at *4 (S.D.N.Y. Sept. 18, 2020) (citing *Chance*, 143 F.3d at 703).  However, the Court cannot conclude that the choice to pursue an easier and less efficacious course of care was the product of sound medical judgment because Plaintiff plausibly alleges that the decision was driven by ulterior motives.  *See id.* (citing *Chance*, 143 F.3d at 703)*; see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 415–16 (S.D.N.Y. 2008) (holding that "Plaintiff's allegation" that the sole reason an easier course of care was chosen was "shifting the cost of [Plaintiff's] care to another institution" "is sufficient to establish [a] culpable mental state.").  Plaintiff alleges that the reason he did not receive proper care from his medical providers was because they viewed him as a criminal undeserving of their full attention.  Opp. at 8.  Plaintiff has adequately alleged facts to render this ulterior motive plausible.  During his treatment in the Harlem Hospital Emergency Room, Mr. Acevedo was handcuffed to the bed and NYPD officers were patrolling the emergency room and surveilling him.  *Id.*  The medical records take note of the officers' presence and Mr. Acevedo's "agitat[ion]" directed towards them.  Harlem Hospital Records at 9.  On these facts, which the Court must take as true, the Court cannot conclude that Mr. Acevedo will be unable to demonstrate, following discovery, that Dr. Bruce was subjectively deliberately indifferent to his medical needs.

Defendant's reliance on *Freire v. Zamot* is misplaced. No. 14-cv-304, 2016 WL 6330405 (E.D.N.Y. Oct. 27, 2016). That case is both legally and factually distinguishable. *Id.* at *5. The court in *Freire* applied the deliberate indifference standard under the Eighth Amendment to plaintiff's claims under the Fourteenth Amendment because—prior to the Second Circuit's opinion in *Darnell*—the "legal standard for deliberate indifference to serious medical needs [was] the same." *Id.* Further, though the claim of premature discharge is similar, the plaintiff in *Freire* did not plead any "factual allegations that [the defendant's] decision to discharge him . . . after Plaintiff had received surgery and spent five days in the hospital, deviated from reasonable medical practice . . . ." *Id.* As discussed, Mr. Acevedo's claim survives under the objective standard of deliberate indifference for claims under the Fourteenth Amendment established in *Darnell*. *See* 849 F.3d at 35. Mr. Acevedo has also plausibly alleged that his medical providers choice of an easier and less efficacious treatment plan was not the product of sound medical judgment. *See Chance*, 143 F.3d at 703.

### iii.    Qualified Immunity

The Court cannot, at this stage of the proceedings and on the facts alleged, determine that Dr. Bruce is protected by qualified immunity. The law governing the immunity of government officials from a suit for civil damages is well-settled. "Qualified immunity is available to officials so long as their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether defendants enjoy qualified immunity, 'we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.'" *Id.* (quoting *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014)).

Dr. Bruce has not met the high burden to demonstrate entitlement to the qualified immunity defense on a motion to dismiss. "[A] qualified immunity defense presented on a Rule 12(b)(6) motion 'faces a formidable hurdle . . . and is usually not successful.'" *Id.* at 111 (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears [that the alleged facts, if true, plausibly state a claim] that would entitle [a defendant] to relief." *Id.* at 110–11 (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.* (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). As described above, Plaintiff plausibly alleges that Dr. Bruce knew that he needed better care and consciously chose an easier and less efficacious course of treatment. The Moving Defendants do not point to *any* facts that would entitle her to the qualified immunity defense. Moving Br. at 8–9. Accordingly, the Court cannot find that Dr. Bruce is entitled to the defense at this stage in the case.

### d. Municipal Liability of H+H Under *Monell*

Though Mr. Acevedo has pleaded that his rights were violated by H+H employees, he has not pleaded sufficient facts to hold H+H liable for the acts of its employees. The Court construes Plaintiff's Section 1983 claim against H+H as seeking to hold H+H liable for the unconstitutional acts of its employees under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). As a municipal corporation, H+H cannot be held liable under Section 1983 pursuant to a theory of *respondeat superior. See Rookard*, 710 F.2d at 45; *see also Monell* 436 U.S. 690–94 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) ("[A] municipality cannot be made liable [under Section 1983] by application of the doctrine of *respondeat superior*."). Rather, "liability under [Section] 1983 is governed by the principles set forth in *Monell*." *Simpkins*, 832 F. Supp. at 73 (citing *Rookard*,

710 F.2d at 44–45).  To establish a claim under *Monell*, a plaintiff must "demonstrate that, through

its deliberate conduct, the municipality was the moving force behind the alleged injury."  *Roe v. City

of Waterbury*, 542 F.3d 31, 37 (2d Cir. 2008) (internal quotation marks and citation omitted).

Therefore, to state a claim under Section 1983 against a municipal corporation, "a plaintiff is

required to plead and prove three elements:  (1) an official policy or custom that (2) causes the

plaintiff to be subjected to (3) a denial of a constitutional right."  *Wray v. City of New York*, 490 F.3d

189, 195 (2d Cir. 2007) (internal quotation marks and alterations omitted); *see Monell*, 436 U.S. at

690–91.

Mr. Acevedo has not adequately pleaded the existence of a policy or custom to support

liability under *Monell*.  A plaintiff may satisfy the "policy or custom" requirement in one of four

ways:  by proving the existence of (1) a formal policy, *see Monell*, 436 U.S. at 690; (2) actions taken or

decisions made by final municipal policymakers that caused the violation of plaintiff's rights, *see*

*Pembaur*, 475 U.S. at 483–84; (3) a practice so persistent and widespread that it constitutes a "custom

or usage" and implies the constructive knowledge of policymakers, *see Monell*, 436 U.S. at 690–91; or

(4) a failure to properly train or supervise municipal employees that amounts to deliberate

indifference to the rights of those with whom municipal employees will come into contact, *City of

Canton v. Harris*, 489 U.S. 378, 388 (1989); *see also Moray v. City of Yonkers*, 924 F. Supp. 8, 12

(S.D.N.Y. 1996).  A single occurrence does not give rise to liability unless caused by an official policy

or the decision of a final policymaker.  *Roe*, 542 F.3d at 37; *see also Pembaur*, 475 U.S. at 480.  Mr.

Acevedo does not allege the existence of a formal policy or an unwritten "custom or usage" that led

to the violation of his rights—and in fact alleges that his providers contravened municipal policy in

the course of his treatment.  *See* Opp. at 5.  Plaintiff also does not argue—and the facts he alleges do

not support—that H+H is liable because it failed to properly train or supervise its employees.

24

While Mr. Acevedo alleges that his care was the result of a delegation of policymakers to his providers to set policy, he does not plead sufficient facts to support that allegation. "Where a plaintiff seeks to hold a municipality liable for a 'single decision by [a] municipal policymaker[],' the plaintiff must show that the official had final policymaking power." *Roe*, 542 F.3d at 37 (citing *Pembaur*, 475 U.S. at 480 and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988)) (internal citations omitted). "An official has final authority if [his or her] decisions, at the time they are made, 'may fairly be said to represent official policy.'" *Id.* (quoting *McMillan v. Monroe County, Alabama*, 520 U.S. 781, 784 (1997)). "Put slightly differently, '[w]here an official has final authority over significant matters involving the exercise of discretion, the choices he makes represent government policy.'" *Byrnes v. Mahon*, No. 07-cv-633, 2009 WL 10742088, at *4 (S.D.N.Y. Feb. 9, 2009) (quoting *Rookard*, 710 F.2d at 45). "Whether [an] official [has] final policymaking authority is a legal question," determined "on the basis of state law." *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000). "In making that determination, courts may refer to 'state and local positive law, as well as custom or usage having the force of law.'" *Byrnes*, 2009 WL 10742088, at *4 (quoting *Jeffes*, 208 F.3d at 57).

Plaintiff's third amended complaint contains no facts that indicate that any of the physicians responsible for his care had decision-making authority over significant matters. Nothing in the complaint suggests that any of his medical providers had final authority—delegated or express—over anything other than his care. Plaintiff therefore fails to state a claim to hold H+H liable under Section 1983 based on an act of a final policymaker. *See, e.g., Powell v. Corr. Med. Care, Inc.*, No. 13-cv-6842, 2014 WL 4229980, at *6 (S.D.N.Y. Aug. 15, 2014) (dismissing *Monell* claim where plaintiff alleged "no facts suggesting any individual [physician] defendant was acting as a policymaker."). Accordingly, any claims against H+H based on the unconstitutional conduct of its employees must be dismissed.

**B. State Law Claims**

The Court dismisses any New York state law claims that Plaintiff's complaint could be read to raise because Plaintiff has not alleged that he has filed a notice of claim as required by state law. Although Plaintiff did not assert any state law claims in his complaint, the Court must construe Plaintiff's complaint liberally to "to raise the strongest arguments that they *suggest*." *Triestman* , 470 F.3d at 474. Plaintiff's complaint could be read to raise a New York state law negligence claim against the First Visit Defendants and the Second Visit Defendants and a claim for *respondeat superior* liability against H+H based on the alleged negligence of his medical providers.

Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *C.S.A. Contracting Corp. v. New York City Sch. Constr. Auth.*, 833 N.E.2d 266, 268 (N.Y. 2005); *see also Fincher v. Cnty. of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy*, 164 F.3d at 794 (applying the notice of claim requirement to claims against H+H) (quoting *Fincher,* 979 F. Supp. at 1002). "The notice of claim must provide, among other things, the nature of the claim and must be filed within ninety days after the claim arises." *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 248 (E.D.N.Y. 2012) (citing N.Y. Gen. Mun. Law § 50-e). "In addition, the plaintiff must plead in his complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim." *Id.* (citing N.Y. Gen. Mun. Law § 50-i). "'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction." *Tulino v. City of New York*, No. 15-cv-7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19,

2016) (quoting *AT&T Co. v. New York City Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)).  Mr. Acevedo has failed to affirmatively plead that he served a notice of claim on any defendant with respect to his New York state law claims.  Accordingly, his New York state law claims are dismissed.[4]  *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C. Leave to Amend

The Court will not grant Plaintiff leave to amend his federal claims against H+H because any further amendment would be futile.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defect, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco*, 222 F.3d at 112 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  "'Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . .'" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)).  "Repeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend.  *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998).  "In general, when assessing whether an amended complaint would state a claim, courts consider the proposed amendments . . . along with the remainder of the complaint." *Pyskaty*, 856 F.3d at 225.  "Although courts commonly look to proposed amendments to determine futility, . . . courts may consider all possible amendments when

---

[4] The Moving Defendants argue that the Court lacks subject matter jurisdiction over the state law claims.  *See* Moving Br. at 13.  That argument was premised on Plaintiff's federal claims having been dismissed.  Because the Court finds that it does not have jurisdiction as a result of Plaintiff's failure to plead that he served the required notice of claim, the Court does not reach the Moving Defendants' argument.

determining futility." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (unpublished). Here, the Court cannot conclude that any amendment could cure the deficiencies identified. Plaintiff has had the benefit of two rulings addressing his federal claims against H+H. *See* Dkt. Nos. 6, 9. Both rulings identified defects in Plaintiff's federal claims against H+H and granted Plaintiff leave to amend to cure these defects. *See* Dkt. No. 6 at 6; Dkt. No. 9 at 5. Plaintiff has not cured these defects. Even accounting for factual allegations Mr. Acevedo first introduced in his brief in opposition, he has not proposed additional allegations that would affect the Court's determination that there is no basis to find H+H liable under any theory of municipal liability. Thus, further amendment of Plaintiff's complaint would be futile. Accordingly, the Court dismisses Plaintiff's federal claims against H+H with prejudice.

The Court will, however, grant Mr. Acevedo leave to amend his Section 1983 claims against Dr. Kaur, Dr. Dhillon, Dr. Wilkinson, and Dr. Valdivieso and his state law claims against all Medical Defendants. Only the most recent ruling identified his failure to plead facts relating to the requirement that a defendant must be personally involved in the alleged constitutional violation. *See* Dkt. Nos. 6 at 5. Because Plaintiff has pleaded sufficient facts to plausibly allege that his constitutional rights were violated by other First Visit Defendants, the Court cannot conclude that any amendment would be futile as to Dr. Kaur and Dr. Dhillon. Similarly, neither of the prior rulings addressed the "involuntary custody" requirement, and the Court cannot conclude that Mr. Acevedo would be unable to allege facts to plausibly demonstrate that he was in custody during his second visit to Harlem Hospital. Finally, neither of the prior rulings addressed the notice of claim requirement under state law. In light of Plaintiff's *pro se* status, the Court dismisses his New York state law claims against all Medical Defendants and his Section 1983 claims against Dr. Dhillon, Dr. Kaur, Dr. Valdivieso, and Dr. Wilkinson without prejudice.

## V.    SUMMARY

The only surviving claims are Mr. Acevedo's Section 1983 claims against Defendants Bruce and Revello.  Mr. Acevedo has pleaded sufficient facts to overcome Dr. Bruce's motion to dismiss his Section 1983 claim.  Because similar logic applies to Dr. Revello, the Court cannot dismiss Plaintiff's Section 1983 claim against her at this time.  Though Dr. Revello has been served with process, Dr. Revello has not yet answered or otherwise responded to the third amended complaint.  *See* Dkt. No. 40.  Defendant Revello is therefore in default.

Mr. Acevedo's remaining claims—both New York state law and federal law—are dismissed.  As discussed above, he has not pleaded sufficient facts to state his Section 1983 claims against Dr. Dhillon, Dr. Kaur, Dr. Valdivieso, or Dr. Wilkinson as individuals or to hold H+H liable under *Monell*.  His New York state law claims must be dismissed because he has not pleaded that he has served a notice of claim as required by New York state law.

## VI.    CONCLUSION

For the foregoing reasons, the Moving Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Moving Defendants' motion is denied with respect to Plaintiff's Section 1983 claim against Dr. Bruce.  The Court grants their motion to dismiss Plaintiff's New York state law claims and Section 1983 claims against H+H and Dr. Valdivieso and Plaintiff's New York state law claim against Dr. Bruce, but does so without prejudice with the exception of his Section 1983 claim against H+H.  Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the Court dismisses Plaintiff's Section 1983 claims and New York state law claims against Dr. Kaur, Dr. Dhillon, and Dr. Wilkinson and his New York state law claims against Dr. Revello without prejudice.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

Plaintiff is granted leave to file an amended complaint only to correct the deficiencies identified with respect to his state law claims against all defendants and with respect to his Section 1983 claims against Dr. Kaur, Dr. Dhillon, Dr. Valdivieso, and Dr. Wilkinson.  Any amended complaint must be filed no later than thirty days from the entry of this order.

The Court requests that counsel for Defendant provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 62 and to mail a copy of this order to Plaintiff by certified mail.

SO ORDERED.

Dated:  October 1, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge

30