USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/8/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

FELIPE ACEVEDO,

                              Plaintiff,

                  -v-

CITY OF NEW YORK, *et al.*,

                        Defendants.

------------------------------------------------------------------ X

1:24-cv-558-GHW

MEMORANDUM
OPINION & ORDER

GREGORY H. WOODS, United States District Judge:

On August 6, 2023, Plaintiff Felipe Acevedo was shot in the foot.  Soon thereafter, he was arrested by New York City Police Department ("NYPD") Officers Edwin Howell and Griselly Rosario (the "NYPD Defendants").  They took him to Harlem Hospital for care.  A few hours later, he was discharged into the NYPD Defendants' custody.  They took him to the 25th Precinct's stationhouse.

The NYPD Defendants interrogated Mr. Acevedo at the station for six hours.  He remained in excruciating pain, struggled to walk, and bled through his bandages.  All the while, he repeatedly asked for additional medical attention.  He was ignored, mocked, and made to walk on his injured foot.  Eventually, the NYPD Defendants released him to the street, bleeding and in agony.  Days later, Mr. Acevedo visited Mount Sinai Hospital.  There, medical staff determined that his wound was infected and that he had sustained several fractures in his foot.

Mr. Acevedo has asserted claims against Officers Howell and Rosario under 42 U.S.C. § 1983 for arresting him without probable cause and for the conditions of his confinement at the 25th Precinct.  Mr. Acevedo also seeks to hold his Harlem Hospital medical providers—Dr. Katherine Bruce, Dr. Samantha Revello, Dr. Rajesh Dhillon, Dr. Sukhman Kaur, Dr. Cameron Wilkinson, and Dr. Sebastian Rueda Valdivieso (the "Medical Defendants")—liable under New

York state law. The NYPD Defendants have moved to dismiss all claims against them. The Medical Defendants have moved to dismiss the state law claims against them. Because Mr. Acevedo has adequately pleaded that the NYPD Defendants were deliberately indifferent to his medical needs and that his arrest was not privileged, the NYPD Defendants' motion to dismiss Mr. Acevedo's federal claims is DENIED. However, because Mr. Acevedo has not adequately pleaded that he timely served any defendant a notice of claim, the motions to dismiss the state law claims are GRANTED.

I.      BACKGROUND

A. Facts[1]

In the early hours of August 6, 2023, Mr. Acevedo was shot in the foot. FAC ¶ 1. That injury resulted in profuse bleeding and broken bones. *Id.* Shortly thereafter, NYPD Officers Rosario and Howell arrested him. *See* FAC ¶ 18. He was not presented with an arrest warrant. *Id.* After his arrest, Officers Rosario and Howell transported him to Harlem Hospital. *Id.* ¶ 4.

At the hospital, Mr. Acevedo was handcuffed to his hospital bed. FAC ¶ 3. The NYPD Defendants "guard[ed]" him and "observ[ed] all interactions between [him]" and Harlem Hospital personnel. *Id.*

Defendants Dhillon, Kaur, Bruce, and Revello managed Mr. Acevedo's care at Harlem Hospital. *See* FAC ¶¶ 3–4. Defendants Dhillon and Kaur directed that he be taken for diagnostic imaging. *Id.* ¶ 4. After reviewing the imaging results, they concluded that Mr. Acevedo had not suffered a fracture. *Id.* ¶ 9. Defendants Bruce and Revello—having reviewed the imaging and

---

[1] The facts relevant to this motion are drawn primarily from Plaintiff's fourth amended complaint. Dkt. No. 119, ("FAC"), and are accepted as true for the purposes of this motion. *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In light of Plaintiff's *pro se* status, the Court considers supplemental allegations made by Plaintiff in a filing associated with his notice of claim, Dkt. No. 120 ("Notice of Claim"). *See Johnson v. Wright*, 234 F. Supp. 2d 352, 356 (S.D.N.Y. 2002) (deeming factual allegations contained in pro se plaintiff's brief to "supplement" his pleading).

observed Mr. Acevedo—discharged him to the custody of Officers Rosario and Howell. *Id.* ¶¶ 11–12, 14. At the time of his discharge, Mr. Acevedo was "actively bleeding, pleading for help, and suffering . . . ." *Id.* ¶ 13.

After Mr. Acevedo had been discharged, Defendants Rosario and Howell "forced [him] . . . to stand and [hobble]" "from the hospital bed to a wheelchair, from the wheelchair to [their] police vehicle, and again from the police vehicle into the 25th Precinct." *Id.* ¶¶ 15–16. Over the course of six hours, the NYPD Defendants held Mr. Acevedo at the 25th Precinct. *Id.* ¶ 19. During that time, they conducted "repeated, coercive interrogations," "forc[ing] him . . . to stand and hobble between various interrogation rooms and holding cells located on different floors of the Precinct," and keeping him in holding cells that were "extremely cold." *Id.* ¶ 20. Throughout the six hour period of his confinement, Mr. Acevedo "repeatedly showed the officers that his bandages and orthopedic shoe were completely drenched in fresh, dark red blood," "stated that he was in [insufferable pain] and begged for true medical attention," and "requested to be released from custody" to "clean his wound and change [his wound dressing]." *Id.* ¶ 21.

Defendants Rosario and Howell did not heed Mr. Acevedo's pleas. Instead, they "mocked [his] cries of pain, made snide remarks and . . . disregard[ed] the clear[] evidence of his severe injuries." *Id.* ¶ 22. After they had concluded their interrogation, they "callously" ordered Mr. Acevedo to "get the f*** out" of the police station, laughing at his cries of pain. *Id.* ¶ 25. Mr. Acevedo remained "stranded, in agony, and bleeding on the street" until, by chance, a friend's mother saw his plight and "helped him into a taxi." *Id.*

Mr. Acevedo was traumatized by his ordeal. Though he "knew he needed" to seek additional medical care, he sought "safety within the confines of his home, with the dead[]bolts locked." *Id.* ¶ 26.

Five days later, on August 11, 2023, his "[f]ederal probation officer" "forced" him to "return

to Harlem Hospital for a follow-up appointment." *Id.* ¶ 27. Defendants Valdivieso and Wilkinson, who managed his care during this visit, ordered diagnostic imaging and also concluded that Mr. Acevedo's foot was not broken. *Id.* ¶ 39.

On August 15, 2023, Mr. Acevedo voluntarily sought care at Mount Sinai Hospital. *Id.* ¶ 42. The Mount Sinai providers took further diagnostic imaging and observed him overnight to monitor an infection that had beset his wound *Id.* ¶ 43. They concluded that he had suffered several fractures in his injured foot. *Id.* ¶ 45. They provided him a comprehensive treatment regimen, including a "splint," a "camboot," "crutches," and "appropriate pain medication." *Id.* ¶ 46.

### B. Procedural History

The Court directs the reader to its prior written opinions in this case for a review of the early procedural history in this case. *See Acevedo v. City of New York*, No. 1:24-CV-558, 2025 WL 2771622 (S.D.N.Y. Oct 1, 2025) ("Medical Op."); *Acevedo v. City of New York*, No. 1:24-CV-558, 2025 WL 2771622 (S.D.N.Y. Sept. 29, 2025) ("*Monell* Op."). The Court reviews the more recent procedural history as is relevant to the motions to dismiss below.

On April 14, 2025, Plaintiff filed his third amended complaint, asserting claims against the NYPD Defendants, the City of New York, the Medical Defendants, and New York City Health + Hospitals ("H+H"). Dkt. No. 48. On September 29, 2025, the Court dismissed his claims against the City of New York. *See Monell* Op. On October 1, 2025, the Court allowed his Section 1983 claim against Defendants Bruce and Revello to proceed, but dismissed his Section 1983 claims against Defendants Kaur, Dhillon, Wilkinson, Valdivieso and H+H. *See* Medical Op. With the exception of his claims against H+H, he was granted leave to amend his Section 1983 claims. *Id.* The Court also dismissed all of his state law claims against the Medical Defendants and H+H because he had not alleged that he had served a notice of claim as required by New York state law but granted him leave to amend to cure that deficiency. *Id.*

4

On December 4, 2025, Plaintiff filed his fourth amended complaint. *See* FAC. He also filed a copy of a notice of claim. *See* Notice of Claim. That notice of claim was dated November 21, 2025 and addressed to the Clerk of the New York State Court of Claims. *Id.* In his fourth amended complaint, he named as defendants the NYPD Defendants and the Medical Defendants. He asserted violations of his constitutional rights arising out of his initial arrest, his allegedly inadequate care during his visits to Harlem Hospital, and the conditions of his confinement in the 25th Precinct following his discharge from Harlem Hospital. *See generally* FAC.

On January 16, 2026, the Medical Defendants[2] filed a partial motion to dismiss any state law claims the fourth amended complaint could be construed to raise. Dkt. No. 130 ("Medical Mem."). They argued that any state law claims against the Medical Defendants should be dismissed because the notice of claim Mr. Acevedo filed and purported to serve was never served on H+H or any Medical Defendant. *Id.* at 7–10. The Medical Defendants also argued that even if the Court were to find that Mr. Acevedo served his notice of claim on the correct parties, the notice was untimely and insufficient. *Id.* at 10–12. Finally, the Medical Defendants argued that the notice of claim defect could not be remedied and that as a result any state law claims should be dismissed with prejudice. *Id.* at 12–15.

On May 19, 2026, Mr. Acevedo filed an opposition to the Medical Defendants' motion to dismiss. Dkt. No. 150 ("Medical Opp'n"). Mr. Acevedo argued that his pleadings had provided notice to the Medical Defendants of his state law claims. *Id.* at 2–5. In particular, he argued that the doctrine of relation back cured his prior failure to serve a notice of claim. *Id.* at 2. He also argued that the Medical Defendants' argument concerning state law claims did not merit dismissal of his federal claims, which he argued had been adequately pleaded. *Id.* at 5–14.

---

[2] The motion to dismiss only names Defendants Bruce, Dhillon, Revello, and Wilkinson. Dkt. No. 126. However, because Defendants Kaur and Valdivieso are represented by the same counsel, *see* Dkt. No. 122 (request for leave to file motion to dismiss), the Court construes the motion as applicable to all Medical Defendants.

The Medical Defendants' motion was fully briefed when they replied on May 29, 2026.  Dkt. No. 151 ("Medical Reply").  They argued that Mr. Acevedo had not addressed the basis for their motion because he had not addressed his failure to plead that he had properly and timely served a notice of claim as required by state law.  *Id.* at 2–4.  They also reprised their argument that the Court should not extend his deadline to file and serve a notice of claim and argued that the relation back doctrine did not cure the failure to file and serve one.  *Id.* at 4–6.

On February 2, 2026, the NYPD Defendants moved to dismiss the claims asserted against them in the fourth amended complaint.  Dkt. No. 139 ("NYPD Mem.").  They first argued that the operative complaint did not adequately plead that Mr. Acevedo's conditions of confinement violated his due process rights.  *Id.* at 5–13.  The NYPD Defendants construed the complaint as raising two such claims:  the first premised on the physical circumstances of his confinement, including the temperature of his holding cell, *id.* at 5–10, and the second premised on the alleged denial of medical treatment.  *Id.* at 10–13.  The NYPD Defendants next argued that Mr. Acevedo had not stated a claim for false arrest either because the complaint does not plead sufficient facts to state the claim or because there was probable cause for his arrest.  *Id.* at 13–16.  In support of their contention that there was probable cause to arrest Mr. Acevedo, the NYPD Defendants cite the arrest report filed alongside their memorandum of law.  *See* Dkt. No. 138 ("Shapovalova Decl."); Dkt No. 138-1 ("Arrest Report").  The NYPD Defendants argued that the Court can take judicial notice of the Arrest Report or, in the alternative, could convert their motion into one for summary judgment.  NYPD Mem. at 5.  The NYPD Defendants also argued that they were entitled to qualified immunity on all of Mr. Acevedo's federal constitutional claims.  *Id.* at 16–20.  Finally, the NYPD Defendants argued that Mr. Acevedo should not be granted leave to amend his complaint.  *Id.* at 20–21.  Alongside their motion, the NYPD Defendants filed and served a notice to Mr. Acevedo apprising him of their request to convert the motion to dismiss into a motion for summary judgment.  *See*

Dkt. Nos. 137, 140.

Mr. Acevedo did not file an opposition to the NYPD Defendants' motion. Accordingly, the Court deemed the motion fully briefed on April 3, 2026. Dkt. No. 147.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor. *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of N.Y Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). A document is considered "integral" to the complaint where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted). Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in the complaint or on which plaintiff relied in drafting the complaint). "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and it must be clear that "there exist no material disputed issues of fact regarding the relevance of the document." *DiFolco*, 622 F.3d at 111 (quoting *Beer*, 463 F.3d at 134).

In addition, "[i]t is well established that a district court may rely on matters of public record in deciding a motion to dismiss" or a motion for judgment on the pleadings, "including arrest reports, criminal complaints, indictments, and criminal disposition data." *Gomez v. City of N.Y.*, No. 16 CV 1274, 2017 WL 1034690, at *1 n. 1 (E.D.N.Y. Mar. 16, 2017) (quoting *Fairlev v. Collins*, No. 09 CV 6894, 2011 WL 1002422, at *1 (S.D.N.Y. Mar. 15, 2011) (collecting cases)).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.

8

2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)).  Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir. 1994)).  However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell*, 980 F. Supp. 2d at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F.Supp.3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## III.    DISCUSSION

### A.    Federal Claims

Mr. Acevedo has adequately pleaded Section 1983 claims against the NYPD Defendants arising out of his arrest and the conditions of his confinement following his discharge from Harlem Hospital.  To state a claim under Section 1983, a plaintiff must allege that the defendant "acted under color of state law and that [the defendant] deprived him of a right secured by the Constitution or laws of the United States." *Palmieri v. Lynch*, 392 F.3d 73, 78 (2d Cir. 2004) (citing *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  "Section 1983 does not in and of itself create any substantive rights; rather, a plaintiff bringing a § 1983 claim must demonstrate a violation of an independent federal constitutional or statutory right." *Watts v. New York City Police Dep't*, 100 F. Supp. 3d 314, 322 (S.D.N.Y. 2015) (citing *Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617–18 (1979)).  Here, the Court construes Plaintiff to be asserting two claims against the NYPD Defendants arising under Section 1983:  first, that he was arrested without probable cause in violation of his rights under the Fourth Amendment; and second, that his conditions of confinement violated his right to due process.  The Court addresses each claim in turn.

### i.    False Arrest

Mr. Acevedo's false arrest claim cannot be dismissed because he has adequately pleaded that his arrest was not privileged.  A false arrest claim under Section 1983 resting on an individual's Fourth Amendment right to be free from unreasonable seizures, including arrest without probable cause, "is substantially the same as a claim for false arrest under New York law." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  Under New York law, a plaintiff seeking to establish a cause of action for false arrest "'must show that:  (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged,'" such as by probable cause or a warrant.  *Willey v. Kirkpatrick*, 801 F.3d 51, 70–71 (2d Cir. 2015) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 457 (1975)).  To assess probable cause, a court considers only the facts "available to the officer at the time of the arrest and immediately before it." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).  The NYPD Defendants do not dispute that the first three elements of the false arrest claim adequately pleaded; they only dispute whether Mr. Acevedo has adequately pleaded the fourth element.

Mr. Acevedo has adequately pleaded that his confinement was not privileged.  "Where an officer makes an arrest without a warrant, the presumption arises that the plaintiff's arrest was unlawful." *Jenkins v. City of New York*, 478 F.3d 76, 88 (2d Cir. 2007) (citing *Broughton*, 37 N.Y.2d at 459).  Here, Mr. Acevedo alleges that he was not presented with an arrest warrant and that he was a victim of a crime—rather than the perpetrator of one—at the time of his arrest.  FAC ¶¶ 18, 23.[3]

---

[3] Though the complaint does not directly state that Defendants Howell and Rosario were the arresting officers, he does allege that he was "transported by the NYPD" to the emergency room at Harlem Hospital and that, while at the Hospital, "Officers ROSARIO and HOWELL were ever present."  FAC ¶¶ 1, 3.  He also alleges that "[a]t no point did [the NYPD Defendants] possess an arrest warrant . . . ."  The most favorable inference from the facts as pleaded is that the NYPD Defendants effectuated his arrest in the first instance.

Thus, he is entitled to the presumption that his arrest was not privileged.  *See Marom v. City of New York*, No. 15-CV-2017 (PKC), 2016 WL 916424, at *5 (S.D.N.Y. Mar. 7, 2016), *on reconsideration in part*, No. 15-CV-2017 (PKC), 2016 WL 5900217 (S.D.N.Y. July 29, 2016)).

On the facts pleaded in the complaint, the Court cannot conclude that the arrest was privileged by the existence of probable cause.  Probable cause is an affirmative defense to a false arrest claim.  *See Mitchell v. City of New York*, 841 F.3d 72, 77 (2d Cir. 2016).  "Where an arrest is not made pursuant to a judicial warrant, the defendant in a false arrest case bears the burden of proving probable cause as an affirmative defense."  *Id.*  And "[t]he pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defense . . . and to affirmatively plead facts in avoidance of such defenses."  *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007).  Thus, "false arrest claim can be dismissed based on probable cause only if it is evident from the facts alleged in the complaint that the officers had probable cause."  *Moore v. City of New York*, No. 22 CIV. 10957, 2024 WL 3361193, at *4 (S.D.N.Y. July 10, 2024) (citing *Silver v. Kuehbeck*, 217 F. App'x 18, 22 (2d Cir. 2007) (summary order)).

Mr. Acevedo's complaint does not allege facts establishing that the NYPD Defendants had probable cause to arrest him.  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (internal quotation omitted).  The test for probable cause is an objective one and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest."  *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).  "[T]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."

11

*Panetta v. Crowley,* 460 F.3d 388, 395–96 (2d Cir. 2006) (citation omitted). Here, the fourth amended complaint does not contain facts on which the Court can conclude that the NYPD Defendants had probable cause to arrest him.

At this stage in the litigation, the Court will not consider the Arrest Report in resolving the NYPD Defendants' motion. Federal Rule of Civil Procedure 12 provides that "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion *shall* be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. 12(b) (emphasis added). Emphasizing the use of the word "shall," the Second Circuit has held that "the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006). However, a court "may also consider matters of which judicial notice may be taken under" Federal Rule of Evidence 201 without converting a motion to dismiss to a motion for summary judgment. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "In the motion to dismiss context, however, a court should generally take judicial notice 'to determine what statements [public documents] contain [ ] . . . not for the truth of the matters asserted.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 698 (S.D.N.Y. 2011) (quoting *Kramer*, 937 F.3d at 774).

The Court cannot consider the facts in the Arrest Report without converting the motion into one for summary judgment. In their opposition, the NYPD Defendants rely on the Arrest Report both in support of their arguments that there was probable cause to arrest Plaintiff and that there was arguable probable cause. *See* NYPD Mem. at 15–16, 19–20; *see also* Arrest Report. The Court may properly take judicial notice of the legal effect of its existence—that Mr. Acevedo was arrested for the crimes stated in the Arrest Report. The Court can also take judicial notice of the

statements in the Report. However, it cannot properly consider the truth of the facts in the Report—namely, that an individual witnessed Plaintiff discharge a firearm and flee and reported that fact to the arresting officer—without converting the NYPD Defendants' motion into one for summary judgment.

The cases the NYPD Defendants cite in support of their contention that the Court may take judicial notice of the facts in an arrest report are distinguishable. In all of these cases, although the court took judicial notice of an arrest report, the court dismissed the plaintiffs' claims of false arrest because the arrest report in combination with other criminal prosecution documents showed that the arrest had initiated a criminal proceeding that had resulted in a conviction. *See, e.g.*, *Harris v. City of New York*, No. 09-CV-3474, 2013 WL 4858333, at *6 (E.D.N.Y. Sept. 10, 2013) (concluding that because the plaintiff "pled guilty to a charge to resolve a criminal prosecution that began with his July 23, 2008 arrest," he could not pursue "false arrest claims related to that arrest"); *Wingate v. Deas*, No. 11-CV-1000, 2012 WL 1134893, at *3 (E.D.N.Y. Apr. 2, 2012) (concluding that the plaintiff's guilty plea "in satisfaction of the crimes for which he was arrested and charged" "precludes recovery under § 1983 for false arrest since it establishes that probable cause existed at the time of arrest" (quotation omitted)); *Wims v. New York City Police Dep't*, No. 10 CIV. 6128 PKC, 2011 WL 2946369, at *3 (S.D.N.Y. July 20, 2011) ("That plaintiff pled guilty to only one of the two initial charges—and to a lesser charged offense—nevertheless precludes recovery under section 1983 for false arrest"). The results of these cases are consequences of the unremarkable principle that a conviction is "conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of the arrest." *Cameraon v. Fogarty*, 806 F.3d 380, 388 (2d Cir. 1986). Here, the NYPD Defendants do not provide documents related to the disposition of the charges associated with Mr. Acevedo's arrest. The legal fact of Mr. Acevedo's arrest is insufficient, standing alone, establish the affirmative defense of probable cause.

13

The Court declines to convert the NYPD Defendant's motion to one for summary judgment. The "essential inquiry" in determining whether to convert a motion to dismiss into one for summary judgment is "whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Krijn v. Pogue Simone Real Estate Co.,* 896 F.2d 687, 689 (2d Cir. 1990) (internal quotations omitted). However, even where, as here, the non-movant has been provided a reasonable opportunity to present facts outside the pleadings, "federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, Civil § 1366 (3d ed. 2004)); *see also McCracken v. Verisma Sys., Inc.*, 91 F.4th 600, 609 (2d Cir. 2024)). "In exercising that discretion, a district court typically considers 'whether or not the proffered material, and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure, is likely to facilitate the disposition of the action.'" *Kristoffersson on behalf of R.R. v. Port Jefferson Union Free Sch. Dist.*, No. 23-7232-CV, 2024 WL 3385137, at *3 (2d Cir. July 12, 2024) (citing Wright & Miller, *supra*, § 1366).

Here, the Court declines to consider the Arrest Report because converting the motion to dismiss to a partial motion for summary judgment on the false arrest claim will not facilitate disposition of this action. Mr. Acevedo is asserting both a false arrest claim and a claim arising out of the conditions of his confinement. As described in further detail below, Mr. Acevedo has stated a claim against the NYPD Defendants arising out of his conditions of confinement. The Arrest Report does not address facts related to Mr. Acevedo's condition of confinement claim. Therefore, even if the Court were to convert the motion to dismiss into a motion for summary judgment on the

false arrest claim and resolve that motion in the NYPD Defendants' favor, this action would proceed to discovery on the conditions of confinement claims.[4]  And because the conditions of confinement claims and the false arrest claims arise out of the same series of events taking place over several hours in the morning of August 6, 2023, that discovery process would likely shed light on facts relevant to both claims.  Thus, in the exercise of its discretion, the Court declines to consider the Arrest Report and convert the motion into a motion for summary judgment without the benefit of discovery.  *See Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439, 440 n.1 (S.D.N.Y. 2011) (declining to convert motion when discovery "could uncover evidence to support [the plaintiff's] allegations").

Accordingly, the motion to dismiss Mr. Acevedo's claim of false arrest is denied.

**ii.    Conditions of Confinement**

Mr. Acevedo has stated a claim against the NYPD Defendants based on the conditions of his confinement.  While "[a]s a general matter, the state is under no constitutional duty to provide substantive services to free persons within its borders, . . . when a person is involuntarily held in state custody, and thus wholly dependent upon the state, the state takes on an affirmative duty to provide for his or her 'safety and general well-being.'"  *Charles v. Orange Cnty.*, 925 F.3d 73, 81–82 (2d Cir. 2018) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989)).  "[A] pretrial detainee's claims . . . are governed by the Due Process Clause of the Fourteenth Amendment . . . ."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Because Plaintiff does not allege that he had been convicted and sentenced during the events giving rise to his complaint, his claims

---

[4] While the Court does not consider the Arrest Report in its decision to deny the motion to dismiss, the Court observes that the Arrest Report appears not to support all of the facts necessary to resolve whether Mr. Acevedo's arrest was supported by probable cause.  Probable cause must be assessed by considering the facts "available to the officer at the time of the arrest and immediately before it." *Stansbury*, 721 F.3d at 89.  The NYPD Defendants argue that an eyewitness's positive identification of Mr. Acevedo "provided officers with a reasonable basis to believe Plaintiff possessed a firearm and engaged in conduct creating a grave risk to others . . . ." NYPD Mem. at 16.  The Arrest Report, however, appears to suggest that the positive identification occurred at a line-up following the arrest.  *See* Arrest Report.

of violations of his constitutional rights arise under the Due Process Clause of the Fourteenth Amendment. *See id.* ("A pretrial detainee's claims are evaluated under the Due Process Clause because, pretrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise.") (internal quotation marks and brackets omitted).

Plaintiff has adequately pleaded that the NYPD Defendants were deliberately indifferent to his medical needs, in violation of his constitutional rights.[5]  "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.  Claims of deliberate indifference to serious medical needs are analyzed under a two-pronged standard: "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Id.*  "[T]o establish an objective deprivation, '[an] inmate must show that the conditions [of confinement], either alone or in combination, pose[d] an unreasonable risk of serious damage to his health.'" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)).  On the subjective prong, deliberate indifference is "roughly" equivalent to recklessness. *Id.*  Recklessness "can be defined subjectively (what a person actually knew, and disregarded), or objectively (what a reasonable person knew, or should have known)." *Id.*

---

[5] The NYPD Defendants address Mr. Acevedo's conditions of confinement claim as two claims, the first arising out of the temperature of his holding cell and the second arising out of the alleged deliberate indifference to his serious medical needs.  NYPD Mem. at 5–12.  The Court, consistent with its obligation to construe a *pro se* plaintiff's submissions to raise the strongest arguments they suggest, construes the complaint as raising a single claim arising out of the conditions of confinement.  The temperature of the cell is therefore just one condition that Mr. Acevedo pleads posed "an unreasonable risk of serious damage to his health" "in combination" with the denial of medical care.  *Darnell*, 849 F.3d at 30.

16

Plaintiff's gunshot wound and his broken foot were sufficiently serious conditions such that the alleged deprivation of care amounted to an objectively serious deprivation. "Determining whether a deprivation [of medical care] is an objectively serious deprivation entails two inquiries." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, courts must first determine "whether the prisoner was actually deprived of adequate medical care." *Id.* An "official's duty is only to provide reasonable care"; "officials who act reasonably in response to an inmate-health risk cannot be found liable . . . ." *Id.* at 279 (internal brackets omitted). "[C]onversely, failing to take reasonable measures in response to a medical condition can lead to liability." *Id.* at 280 (internal quotations omitted).

Second, the objective test asks whether the inadequacy in medical care is "sufficiently serious." *Id.* "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, the conditions themselves must be evaluated in light of contemporary standards of decency." *Darnell*, 849 F.3d at 30. To determine if the medical need is "sufficiently serious," courts "consider factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86. "In cases where the inadequacy is in the medical treatment given, the seriousness inquiry is narrower" and "focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280 (internal quotations omitted). "In most cases, the actual medical consequences that flow from the denial of care are highly relevant in determining whether the denial of treatment subjected the detainee to a significant risk of serious harm." *Charles*, 925 F.3d at 86.

Plaintiff has adequately pleaded that he was actually deprived of medical care for a sufficiently serious condition during his confinement at the 25th Precinct. Each of the factors that courts consider—and the consequences of the deprivation—demonstrate that the deprivation was

17

objectively serious.  Mr. Acevedo alleges that he had a gunshot wound resulting in a broken foot.  FAC ¶ 2.  He alleges that, when he was discharged, he was still "actively bleeding" and "pleading for help."  *Id.* ¶ 13.  He also alleges that he was in "excruciating pain" and struggling to walk.  *See, e.g.*, *id.* ¶ 15.  While he was being questioned, he alleged that his "bandages and orthopedic shoe were completely drenched in fresh, dark red blood" and "he was in insufferable pain" and "begg[ing] for true medical attention."  *Id.* ¶ 21.  Instead of heeding his requests for further medical care, the NYPD Defendants made him walk on his injured foot during the interrogation and released him to the street.  Several days later, providers at Mount Sinai diagnosed Plaintiff's fractures, observed Plaintiff overnight to monitor an infection, and provided Plaintiff a comprehensive care regimen.  *Id.* ¶¶ 44–45.  He alleges that the failure to provide the type of care he received at Mount Sinai resulted in extreme pain, "permanent nerv[e] damage[]," and "disfigurement" as a result of needing to stand and walk on his injuries.  *Id.* ¶ 48.  Plaintiff has therefore pleaded facts demonstrating that the "actual medical consequences" of the alleged delay in medical care resulted in "chronic and substantial pain" that affected his daily activities.  *Charles*, 925 F.3d at 86.

Plaintiff has also adequately pleaded that the NYPD Defendants acted with deliberate indifference.  "Deliberate indifference . . . can be established by either a subjective or objective standard."  *Charles*, 925 F.3d at 87.  "A plaintiff can prove deliberate indifference by showing that the defendant official 'recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or should have known*, that the condition posed an excessive risk to [the plaintiff's] health or safety.'"  *Id.* (quoting *Darnell*, 849 F.3d at 35 (emphasis in original)).  Thus, a plaintiff alleging that a defendant was deliberately indifferent to his medical needs "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a

18

substantial risk to the detainee's health." *Id.* (emphasis in original). "Whether the [defendant] knew or should have known of the substantial risk of harm to [a] detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 842 (1994)). "'A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer,* 511 U.S. at 842).

Drawing all reasonable factual inferences in Plaintiff's favor, Mr. Acevedo has adequately pleaded that the NYPD Defendants should have known of the risks of failing to provide further medical care. Here, he has pleaded facts that demonstrate that the risk of not providing Mr. Acevedo further medical care were obvious. Having brought him to Harlem Hospital, the NYPD Defendants knew that Mr. Acevedo had suffered a gunshot wound. FAC ¶ 1. Mr. Acevedo alleges that at the time of his discharge, he was in "crying in pain" and "physically incapable of walking on his . . . foot." FAC ¶ 15. He also alleges that—during his interrogation—he complained of his pain while being made to walk on his injured foot and showed his blood-soaked orthopedic shoe to the NYPD Defendants while pleading for medical care. *Id.* ¶¶ 15–16. Accepting these allegations as true, the facts as pleaded in the fourth amended complaint point to the plausible inference that the NYPD Defendants knew or should have known that not providing further medical care posed a substantial risk of further injury.

Even under the more demanding subjective standard, Plaintiff has plausibly pleaded that the NYPD Defendants were consciously aware of the risk of failing to further treat his gunshot wound. A government official may "be deliberately indifferent if they '"delay[ ] access to medical care when the inmate [is] in extreme pain and has made his medical problems known to the attendant prison personnel."' *Feliciano v. Anderson,* No. 15-CV-4106, 2017 WL 1189747, at *13 (S.D.N.Y. Mar. 30, 2017) (quoting *Stiehl v. Bailey*, No. 08-CV-10498, 2012 WL 2334626, at *12 (S.D.N.Y. June 19,

2012)).  Mr. Acevedo alleges that he was in extreme pain and made the NYPD Defendants aware of that fact repeatedly after he was discharged from Harlem Hospital.  *See, e.g.*, FAC ¶¶ 15, 21, 22.  He alleges that he "begged for true medical attention."  *Id.* ¶ 21.  He has alleged facts that evince the NYPD Defendants' conscious disregard for those requests for medical treatment.  The Officers "mocked Mr. Acevedo's cries of pain" and "made snide remarks" while holding Mr. Acevedo at the 25th Precinct and forcing him to walk on his injured and bleeding foot.  *Id.* ¶ 22.  And after having completed their questioning, they used foul language to order him out of the police station, "laugh[ing] as he cried" and made no efforts to secure his safe journey home, much less additional medical care.  *Id.* ¶ 25.  It is a plausible inference, based on these facts, that the NYPD Defendants were contemptuous of Mr. Acevedo and consciously ignored his need for medical attention.  Thus, the Court cannot conclude that Mr. Acevedo will be unable to demonstrate, following discovery, that the NYPD Defendants were subjectively deliberately indifferent to his medical needs.

Neither the NYPD Defendants' decision to bring Mr. Acevedo to Harlem Hospital initially nor Mr. Acevedo's decision not to immediately seek care following his release from custody vitiate his claim.  The NYPD Defendants' argument that they discharged their constitutional duty by taking Mr. Acevedo to Harlem Hospital misconstrues Mr. Acevedo's claim.  In *City of Revere v. Massachusetts General Hospital*, 463 U.S. 239 (1983), the Supreme Court held that that the City of Revere fulfilled its constitutional obligation "by seeing that [the individual in custody] was taken promptly to a hospital that provided the treatment necessary for his injury."  *Id.* at 245 (emphasis added).  But Plaintiff's claim arises out of the consequences of the delay in providing medical care caused by his interrogation while his injuries grew more serious—in part due to the alleged conduct of his interrogators—and not providing him additional care despite his evident distress and entreaties.  *See, e.g.*, FAC ¶ 21.  As described above, he had alleged facts to support that inference, including facts that alleged consequences of the denial of care while he remained in the NYPD Defendants' custody

and the allegedly adequate care he received at Mount Sinai. *Id.* ¶¶ 44–48. Indeed, as the Second Circuit has clarified that a plaintiff may state a claim where medical treatment is provided, though in those cases "the seriousness inquiry . . . focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin*, 467 F.3d at 280. Here, Mr. Acevedo alleges that the delay in his treatment at a critical point and the exacerbation of his wound led to permanent damage. And taking the facts as pleaded in the fourth amended complaint as true and drawing all inferences in Mr. Acevedo's favor, the Court cannot conclude that the NYPD Defendants acted reasonably in response to the risk to Mr. Acevedo's health in the period of time he was in their sole custody. *Id.* at 279.[6] Thus, Court must conclude that Mr. Acevedo has stated a claim arising out the conditions of his confinement.

On the facts pleaded in the complaint, the Court cannot grant the NYPD Defendants' motion to dismiss based on Mr. Acevedo's decision not to seek care immediately. Mr. Acevedo alleges that he was traumatized in the immediate aftermath of the ordeal he experienced on August 6, 2023. FAC ¶ 26. He alleges that the NYPD Defendants left him "stranded," and that he only was able to return home promptly due to the "fortuitous intervention of a childhood friend's mother." *Id.* ¶ 25. He alleges that despite knowing he needed further medical attention, he sought "safety within the confines of his home, with the dead[]bolts locked." *Id.* He alleges that he only returned to Harlem Hospital five days later because he was "compelled to" do so by another state actor. *Id.* ¶ 28. In asking the Court to draw an adverse factual inference against Mr. Acevedo based on his decision not to immediately seek further care, the NYPD Defendants rely on cases decided on a motion for summary judgment. *See* NYPD Mem. at 11–12; *see also Carey v. Maloney*, 480 F.

---

[6] Though the Court does not reach the inherently fact-bound issue of what level of care would have been adequate following Mr. Acevedo's release from NYPD custody, the Court also notes the factual differences between the facts as pleaded in the fourth amended complaint and the facts in *City of Revere*. In that case, the individual in custody was also transported to a hospital by his arresting officers after he suffered a gunshot wound. *City of Revere*, 463 U.S. at 240–41. However, he individual remained there for over a week. *Id.* In this case, Mr. Acevedo was discharged after a few hours.

Supp. 2d 548, 558 (D. Conn. 2007) ("Thus, Carey has failed to present evidence from which a reasonable fact-finder could conclude that his difficulty breathing amounted to a serious medical condition . . . ."); *Wittmer v. City of Oneonta*, No. 514-CV-01217, 2016 WL 11505503, at *10 (N.D.N.Y. Oct. 24, 2016) ("Plaintiff has failed to raise an issue of fact as to either element" of deliberate indifference claim.); *Horton v. Vill. of Camden*, No. 99-CV-276, 2001 WL 36647348, *8 (N.D.N.Y. Feb. 1, 2001) ("Moreover, the fact that Plaintiff did not seek medical attention for his injuries until the day after the incident belies any urgency in his condition. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's deliberate indifference claim."). On a motion to dismiss, the Court must take as true Mr. Acevedo's allegation that he did not seek additional care because of the psychological and physical trauma of the ordeal he experienced.

### iii. Qualified Immunity

The Court cannot, at this stage of the proceedings and on the facts alleged, determine that the NYPD Defendants are protected by qualified immunity. The law governing the immunity of government officials from a suit for civil damages is well-settled. "Qualified immunity is available to officials so long as their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To determine whether defendants enjoy qualified immunity, 'we consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law.'" *Id.* (quoting *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014)).

The NYPD Defendants have not met the high burden to demonstrate entitlement to the qualified immunity defense on a motion to dismiss. "[A] qualified immunity defense presented on a

22

Rule 12(b)(6) motion 'faces a formidable hurdle . . . and is usually not successful.'" *Id.* at 111 (quoting *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears [that the alleged facts, if true, plausibly state a claim] that would entitle [a defendant] to relief." *Id.* at 110–11 (quoting *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). "Thus, the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *Id.*

Construing the facts alleged in the fourth amended complaint in the light most favorable to plaintiff, the facts as alleged in the complaint do not demonstrate that the NYPD Defendants are entitled to a qualified immunity defense for either the false arrest or the conditions of confinement claim. As described above, Plaintiff plausibly alleges that the NYPD Defendants knew that he needed better care and consciously chose to ignore his blood-soaked foot and cries of pain and to release him without securing additional medical care.[7] The NYPD Defendants argue they are entitled to the defense as it relates to the false arrest claim based on the facts as stated in documents that the Court may not consider at this stage of the litigation. *See* NYPD Mem. at 20. Accordingly, the Court cannot find that the NYPD Defendants are entitled to the defense at this stage in the case.

---

[7] On this point, the NYPD Defendants argue that the law does not require them to "second guess or override a hospital's affirmative discharge decision." NYPD Mem. at 18. They do not cite any legal support for this point. More fundamentally, this argument ignores the gravamen of Mr. Acevedo's claim. Mr. Acevedo alleges that the need for further medical care was obvious because, in the six hours after he was discharged, he continued to complain of extreme pain, was walking with visible discomfort, and was bleeding profusely. His claim arises out of NYPD Defendants' exacerbation of his injuries by forcing him to walk during his interrogation and by callously releasing him to the street despite the obvious pain and bleeding. It is not solely premised on the NYPD Defendants' decision not to insist on further care at the point when he was discharged. And, in any event, the Court has previously held that Mr. Acevedo has stated a claim arising out of the deliberate indifference of Harlem Hospital personnel. *See* Medical Op.

### B.    State Law Claims

The Court dismisses any New York state law claims that Plaintiff's complaint could be read to raise. Although Plaintiff did not assert any state law claims in his complaint, the Court must construe Plaintiff's complaint liberally to "to raise the strongest arguments that they *suggest*." *Triestman*, 470 F.3d at 474. Plaintiff's complaint could be read to raise a New York state law negligence claims against the Medical Defendants and a New York state law tort claims against the NYPD Defendants.

Under New York law, a notice of claim is a condition precedent to bringing a tort claim against a municipality and any of its officers, agents, or employees. N.Y. Gen. Mun. Law §§ 50-e(1), 50-i(1); *C.S.A. Contracting Corp. v. New York City Sch. Constr. Auth.*, 5 N.Y.3d 189, 192 (2005); *see also Fincher v. Cnty. of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997). "The purpose of the notice-of-claim requirement is to afford the municipality an adequate opportunity to investigate the claim in a timely and efficient manner and, where appropriate, to settle claims without the expense and risks of litigation." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 794 (2d Cir. 1999) (applying the notice of claim requirement to claims against H+H) (quoting *Fincher,* 979 F. Supp. at 1002). "The notice of claim must provide, among other things, the nature of the claim and must be filed within ninety days after the claim arises." *Rose v. Cnty. of Nassau*, 904 F. Supp. 2d 244, 248 (E.D.N.Y. 2012) (citing N.Y. Gen. Mun. Law § 50-e). "In addition, the plaintiff must plead in his complaint that: (1) he has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed and before the complaint was filed; and (3) in that time the defendant has neglected to or refused to adjust or satisfy the claim." *Id.* (citing N.Y. Gen. Mun. Law § 50-i). "'Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction." *Tulino v. City of New York*, No. 15-cv-7106, 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016) (quoting *AT&T Co. v. New York*

24

*City Dep't of Human Res.*, 736 F. Supp. 496, 499 (S.D.N.Y. 1990) (collecting cases)).

Mr. Acevedo has failed to meet the notice of claim requirement with respect to his New York state law claims. Mr. Acevedo did not amend his complaint in order to plead that he had previously served a notice of claim. *See generally* FAC. Instead, alongside his complaint, Mr. Acevedo filed a notice of claim addressed to the "Court of New York State of Claims" dated November 21, 2025. *See* Notice of Claim. However, as pleaded in the fourth amended complaint and as stated in his notice of claim, his claims arise out of events that took place on August 6, 2023 and August 11, 2023. *Id.* Therefore, his deadline to serve his notice of claim was, at the latest, November 9, 2023. As Mr. Acevedo concedes, his notice of claim is untimely. *See id.* The Court construes his invocation of "laches" as a request for leave to serve a belated notice of claim. *See id.*

The Court lacks jurisdiction to consider this request. The provision governing when the deadline to serve a notice of claim may be extended reads as follows:

> Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one of this section, whether such service was made upon a public corporation or the secretary of state. The extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation.

N.Y. Gen. Mun. Law § 50-e(5). The statute goes on to state that "[a]ll applications under this section shall be made to the *supreme court or to the county court . . . .*" *Id.* § 50-e(7) (emphasis added). The "supreme court" and "county court" refer to state courts. The Second Circuit has not interpreted whether, by its terms, a federal district court may grant a request to extend the deadline to serve a notice of claim. *See Parise v. N.Y.C. Dep't of Sanitation*, No. 03–CV–1673, 2007 WL 2746912, at *7 (E.D.N.Y. Sept. 19, 2007) ("[T]here is an open question as to whether a federal district court, as opposed to a state supreme court or a county court, has jurisdiction to permit the amendment of a notice of claim."), *aff'd,* 306 F. App'x. 695 (2d Cir. 2009). "However, district courts within this Circuit 'have routinely found that they lack jurisdiction to even consider . . .'" an

application to extend the notice of claim deadline. *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 710 (S.D.N.Y. 2011) (quoting *Humphrey v. Cnty. of Nassau*, No. 06–CV3682, 2009 WL 875534, at *21 (E.D.N.Y. Mar. 30, 2009)) (collecting cases).  Thus, by its terms, the statute does not grant this Court the authority to entertain Mr. Acevedo's request.[8]

Accordingly, his New York state law claims against both the Medical Defendants and the NYPD Defendants must be dismissed for lack of subject matter jurisdiction.[9]  For avoidance of doubt, the Court only dismisses Mr. Acevedo's state law claims against all defendants.  The Medical Defendants have not renewed their motion to dismiss Mr. Acevedo's claims arising under Section 1983, and those claims may proceed.

### C.    Leave to Amend

The Court will not grant Plaintiff leave to amend his state law claims because any further amendment would be futile.  District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defect, unless amendment would be futile.  *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir. 1988).  Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)).  "'Futility is a determination, as a

---

[8] Even assuming the Court could entertain Mr. Acevedo's request, the Court could not grant it.  The applicable statute of limitations for Mr. Acevedo's personal injury claims is "one year and ninety days after the cause of action [therefore] shall have accrued." N.Y. C.P.L.R. § 217-A.  And the statute of limitations for a claim of intentional infliction for emotional distress is one year. *See id.* § 215(3).  Thus, any request for extension of the deadline to serve a notice of claim must have been made by November 9, 2024 at the latest.  Mr. Acevedo first made the request over a year after that—on November 21, 2025.

[9] Mr. Acevedo argues that "relation back" under Federal Rule of Civil Procedure 15(c) saves his application for an extension to file and serve a notice of claim.  But, by its terms, the doctrine of relation back concerns the timeliness of claims, not applications for extension of state law deadlines. *See* Fed. R. Civ. P. 15(c); *see also Frometa v. Mar-Can Transportation Co., Inc.,* 148 N.Y.S.3d 613, 628 & n. 4 (N.Y. Sup. Ct. 2021) (noting that relation back "does not resolve the notice of claim requirement").

matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . .'" *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "Repeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998). "In general, when assessing whether an amended complaint would state a claim, courts consider the proposed amendments . . . along with the remainder of the complaint." *Pyskaty*, 856 F.3d at 225. "Although courts commonly look to proposed amendments to determine futility, . . . courts may consider all possible amendments when determining futility." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009) (unpublished).

Here, the Court cannot conclude that any amendment could cure the deficiencies identified in Plaintiff's state law claims. Plaintiff concedes that he did not file a notice of claim related to his state law claims prior to November 21, 2025. The Court does not have jurisdiction to grant his request for an extension of the state law deadline to file and serve a notice of claim. Thus, further amendment of Plaintiff's complaint would be futile. Accordingly, the Court dismisses Plaintiff's state law claims with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the NYPD Defendants' motion to dismiss is GRANTED in part and DENIED in part. The NYPD Defendants' motion is denied with respect to Plaintiff's Section 1983 claim of false arrest and his Section 1983 claim arising out of his conditions of confinement. The Court grants the NYPD Defendants' and the Medical Defendants' motions to dismiss Plaintiff's New York state law claims with prejudice.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.

27

*See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Court requests that counsel for Defendants provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.

The Clerk of Court is directed to terminate the motions pending at Dkt. No. 126 and Dkt. No. 136 and to mail a copy of this order to Plaintiff by certified mail.

SO ORDERED.

Dated: June 8, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge